PITONIAK v BORMAN'S, INC

Docket No. 51660. Submitted January 21, 1981, at Detroit.—Decided
    March 18, 1981. Leave to appeal applied for.

Lydia Pitoniak received a money settlement in an action which
    she instituted for an injury sustained in a nonwork-related
    accident. Following her return to work for Borman's, Inc., she
    experienced physical difficulties related to her injury and subse-
    quently filed a petition for hearing with the Bureau of Work-
    man's Compensation, alleging work-related aggravation of her
    prior injury. At the conclusion of the hearing, an administra-
    tive law judge held that the petitioner failed to sustain the
    burden of proving aggravation of the prior injury arising from
    her employment. Petitioner applied for review by the Workers'
    Compensation Appeal Board, which application was granted.
    The board found that petitioner had sustained the burden of
    proof necessary to establish a compensable injury under the
    Worker's Disability Compensation Act and that respondents,
    Borman's, Inc., Vigilant Insurance Company, and Allstate In-
    surance Company, were not entitled to a credit for the money
    petitioner previously received in settlement. Respondents ap-
    peal by leave granted, alleging that they were denied due
    process because of the unrepresentative composition of the
    appeal board panel and that the appeal board erred in finding
    that they were not entitled to credit or reimbursement. Certain
    members of the Workers' Compensation Appeal Board subse-
    quently moved to intervene, which motion was granted by the
    Court of Appeals. *Held:*

    1. Respondents were not denied their due process rights

REFERENCES FOR POINTS IN HEADNOTES
[1, 2, 4] 1 Am Jur 2d, Administrative Law §§ 63-68.
    16A Am Jur 2d, Constitutional Law § 855.
    21 Am Jur 2d, Criminal Law § 221.
    46 Am Jur 2d, Judges § 86.
[3] 1 Am Jur 2d, Administrative Law § 64.
    81 Am Jur 2d, Workmen's Compensation § 79.
[5] 1 Am Jur 2d, Administrative Law § 64.
[6] 1 Am Jur 2d, Administrative Law §§ 406, 410-413.
[7] 82 Am Jur 2d, Workmen's Compensation §§ 246, 287, 313, 403,
    404, 423.

because of the composition of the appeal board. No actual prejudice was shown or claimed, nor was the potential for prejudice so great as to fail to withstand constitutional scrutiny.

2. The board properly determined that petitioner's injury was compensable as a work-related aggravation of a prior injury. The tort settlement was based on the prior injury and not the aggravation thereof, and, thus, credit or reimbursement was not available.

Affirmed.

1. CONSTITUTIONAL LAW — DUE PROCESS — IMPARTIAL TRIBUNALS.

Due process requires that a party to an action must have an opportunity to be heard by an unbiased and impartial decision-maker, and a party who challenges the impartiality of a judge or tribunal need not show actual prejudice to warrant their disqualification, but only that the situation underlying the party's challenge is such as experience teaches involves too high a probability of actual bias on the part of the decision-maker to be constitutionally tolerable.

2. CONSTITUTIONAL LAW — DUE PROCESS — IMPARTIAL TRIBUNALS.

A party to an action is not afforded due process where the judge or decision-maker before whom the matter is heard has a pecuniary interest in its outcome, has been the target of personal abuse or criticism from the party, is enmeshed in other matters involving the party, or might have prejudged the matter because of prior participation as an accuser, investigator, fact-finder, or initial decision-maker.

3. WORKERS' COMPENSATION — IMPARTIAL TRIBUNALS — WORKERS' COMPENSATION APPEAL BOARD — STATUTES.

Members of the Workers' Compensation Appeal Board cannot be said to have a pecuniary interest in the cases brought before them on the basis that their compensation is appropriated by the Legislature and that their decisions thereby would be biased due to a fear of being denied reappointment to the board (MCL 418.265; MSA 17.237[265]).

4. CONSTITUTIONAL LAW — DUE PROCESS — IMPARTIAL TRIBUNALS.

The mixture of investigative and adjudicative functions in those serving as adjudicators in a case constitutes a denial of due process where an aggrieved party overcomes the presumption of honesty and integrity of the adjudicators with proof that the conferring of investigative and adjudicative powers on the same individuals poses a major risk of actual bias or prejudgment.

5. ADMINISTRATIVE LAW — DUE PROCESS — ADMINISTRATIVE AGENCIES
   — IMPARTIAL TRIBUNALS.

   A member of a state agency is not disqualified as a decision-maker in matters brought before the agency for decision merely because the agency has gained familiarity with the facts of a case in the performance of its statutory role; nor is a decision-maker disqualified simply because he has taken a position, even in public, on a policy issue related to a dispute, absent a showing that he is not capable of judging the particular controversy fairly on the basis of its own circumstances.

6. ADMINISTRATIVE LAW — DUE PROCESS — ADMINISTRATIVE AGENCIES.

   The determination as to whether due process requirements are met in hearings before a state agency involves a consideration of the private interest affected by official action, the effect of the procedures used on the risk of erroneous deprivation of such interest, the probable value of any additional or substitute procedural safeguards, and the additional fiscal and administrative burdens that such safeguards would entail.

7. WORKERS' COMPENSATION — REIMBURSEMENT OF BENEFITS — WORKER'S DISABILITY COMPENSATION ACT — STATUTES.

   Reimbursement of workers' compensation benefits paid by an employer or its carrier to an employee for an injury compensable under the Worker's Disability Compensation Act is only available where the injury was caused by and creates liability in a third party, and recovery in an action by an employee for injuries sustained in a nonwork-related accident due to the tortious conduct of a third party does not provide the basis for such reimbursement where an award of benefits is based on an aggravation of the injuries so received (MCL 418.827[1], [5]; MSA 17.237[827][1], [5]).

*Levine & Benjamin, P.C.* (by *Linda K. Harris*), for plaintiff.

*Plunkett, Cooney, Rutt, Watters, Stanczyk & Pedersen* (by *Jonathan T. Kopit*), for defendants.

*Philip J. Prygoski,* for intervenor members of the Workers' Compensation Appeal Board.

Before: N. J. KAUFMAN, P.J., and M. J. KELLY and CYNAR, JJ.

M. J. KELLY, J. Defendants Borman's, Inc., and Vigilant Insurance appeal by leave granted an opinion and order of the Workers' Compensation Appeal Board which reversed a prior decision of an administrative law judge and awarded to the plaintiff $101 per week in workers' compensation benefits.

The parties do not differ as to the facts on appeal. On February 13, 1973, plaintiff, a cashier who had worked for defendant Borman's since 1958, was involved in a nonwork-related automobile accident. The accident resulted in an injury to her left knee and other less severe injuries not at issue. Because of the injuries sustained in the accident, plaintiff was out of work for nine months. Plaintiff returned to work as a cashier on November 12, 1973, and continued working until May 6, 1974, when persistent pain and swelling in her affected knee required the plaintiff to seek further medical attention. On the latter date, Dr. Verne Johnson examined and recommended surgery for the plaintiff's knee. Since that time, the plaintiff has been unable to return to work.

In July, 1975, plaintiff filed a petition for a hearing before the Bureau of Workmen's Compensation, alleging that the work she had done after she returned to her job aggravated the prior injury, making it impossible for the plaintiff to continue working. A hearing was held on October 28, 1976, at which the depositions of Dr. Richard Hall and Dr. Milton Green were introduced into evidence. At the hearing, plaintiff testified that she had instituted a law suit against the driver of the other car that was involved in the automobile accident and that the case had been settled for

$50,000, of which the plaintiff received $33,500. The administrative law judge rendered his decision on July 14, 1977, holding that the plaintiff failed to sustain her burden of proving aggravation of the injury arising from employment with defendant Borman's.

On August 8, 1977, plaintiff filed an application for review with the appeal board, alleging that the administrative law judge's decision was contrary to fact and law. The board granted plaintiff's application for review. In an opinion dated April 17, 1980, the board found that plaintiff had sustained the burden of proof necessary to establish a compensable injury under the Worker's Disability Compensation Act and also held that defendants were not entitled to a credit for the $33,500 plaintiff received from the settlement of her tort suit. We granted the defendants' application for leave to appeal on September 5, 1980.

The defendants first allege that the composition of the three-member appeal board below, lacking a "representative of employer interests of the state", denied to defendants their due process right to a hearing before a fair and impartial administrative tribunal. US Const, Am XIV; Const 1963, art 1, § 17, *In re Murchison,* 349 US 133, 136; 75 S Ct 623; 99 L Ed 942 (1955). The makeup of the appeal board at the time of the hearing was governed by MCL 418.251(1); MSA 17.237(251)(1):

"A worker's compensation appeal board is created, referred to in this act as the board. The board shall consist of 15 members, a majority of whom shall be attorneys at law licensed to practice in the courts of this state. Of the board members, 6 shall be representative of employee interests in the state, 6 members shall be representative of employer interests of the state, and 3 members shall be representative of the general public.

A member of the board shall devote his or her entire time to and personally perform the duties of the office and shall not engage in other business or professional activity. The governor, with the advice and consent of the senate, shall appoint the members for a term of 4 years, and until their successors are appointed and qualified. A vacancy shall be filled for an unexpired term in the same manner as the original appointment. The governor shall designate the chairperson of the board from the general public members."

Under MCL 418.261(2); MSA 17.237(261)(2), the individual members of the board are required to be rotated evenly among all panels:

"A matter pending on review shall be assigned to a panel of 3 members of the board for disposition. The composition of panels shall be alternated so that each member of the board serves on panels with other members of the board with a frequency which is as substantially equal as possible. The decision reached by a majority of the assigned 3 members shall be the final decision of the board. If a majority of the assigned 3 members are unable to agree, the matter shall be reviewed by the entire worker's compensation appeal board."

The defendants allege that this formula necessarily places at least two board members representing employee or employer interests respectively on certain appeal board panels, thus creating a biased tribunal. In the instant case, two board members representative of employee interests were teamed with a third member appointed as a representative of the general public.

A basic tenet of the constitutional right to due process is the availability of a hearing before an unbiased and impartial decision-maker. *Crampton v Dep't of State,* 395 Mich 347, 351; 235 NW2d 352 (1975), citing *Gibson v Berryhill,* 411 US 564, 579;

93 S Ct 1689; 36 L Ed 2d 488 (1973), and *In re Murchison, supra.* A party who challenges the impartiality of a judge or tribunal need not show actual prejudice; it is sufficient grounds for disqualification if the situation is one in which " 'experience teaches that the probability of actual bias on the part of the judge or decision-maker is too high to be constitutionally tolerable' ". *Withrow v Larkin,* 421 US 35, 47; 95 S Ct 1456; 43 L Ed 2d 712 (1975), *Crampton, supra,* 351. In the absence of a claim or finding of actual prejudice, we must analyze whether the potential for prejudice is too great to withstand constitutional scrutiny.

In *Crampton, supra,* 351, the Supreme Court outlined four situations presenting too great a risk of prejudice where a judge or decision-maker:

"(1) has a pecuniary interest in the outcome;

"(2) 'has been the target of personal abuse or criticism from the party before him';

"(3) is 'enmeshed in [other] matters involving petitioner * * *'; or

"(4) might have prejudged the case because of prior participation as an accuser, investigator, fact finder or initial decisionmaker." (Footnotes omitted.)

We will address the above factors *seriatim.*

A. *Pecuniary interest.*

The appeal board members herein do not have a pecuniary interest in the litigation at issue as that term was developed in *Ward v Village of Monroeville,* 409 US 57, 60; 93 S Ct 80; 34 L Ed 2d 267 (1972) (pecuniary interest found where mayor, responsible for village finances, assessed fines for traffic ordinance violations), *Tumey v Ohio,* 273 US 510; 47 S Ct 437; 71 L Ed 749 (1927) (impermissible pecuniary interest of village mayor whose salary was paid from fines assessed in "the liquor court"),

and *Gibson, supra* (pecuniary interest of optometric association excluding those optometrists employed by other entities barred judgment of alleged unethical conduct by nonmembers). Appeal board members are compensated by the state for their services, which salary is appropriated by the Legislature. MCL 418.265; MSA 17.237(265). To argue as defendant does that board members are motivated by the fear of denied reappointment is, we believe, too tenuous a connection to merit a finding of pecuniary interest.

B. *Personal abuse or criticism.*

This factor was found to raise a due process question in *Mayberry v Pennsylvania,* 400 US 455; 91 S Ct 499; 27 L Ed 2d 532 (1971), a decision in which the defendant leveled "highly personal aspersions, even 'fighting words' ", at the trial judge who later sat as trier of fact in the defendant's criminal contempt trial. However, our review of the record in the present case discloses no such personal abuse or attacks by either party.

C. *Enmeshed in legal matters in which the judge is involved.*

Where the deciding judge opposed the litigant in a prior case, due process has been found to require a different trial judge for the litigant's subsequent criminal contempt charge. *Johnson v Mississippi,* 403 US 212; 91 S Ct 1778; 29 L Ed 2d 423 (1971). The present facts indicate no prior involvement of the parties to this action and the appeal board members.

D. *Prejudged the merits of the case due to prior involvement.*

In *Withrow, supra,* 47, the Supreme Court held the mixture of investigative and adjudicative functions would constitute a denial of due process if the aggrieved party could overcome the "presump-

tion of honesty and integrity in those serving as adjudicators" by proof that "conferring investigative and adjudicative powers on the same individuals poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented". See also *Richardson v Perales,* 402 US 389; 91 S Ct 1420; 28 L Ed 2d 842 (1971). The *Withrow* Court also described its decision in *Morrissey v Brewer,* 408 US 471; 92 S Ct 2593; 33 L Ed 2d 484 (1972), as requiring that review of an initial decision be made by one other than the initial adjudicator.

Under MCL 418.255(1); MSA 17.237(255)(1), the appeal board is specifically empowered to "hear and decide all appeals from the orders of the hearing referees and director". Further, a board member, once appointed, may not engage in other "business or professional activity". MCL 418.251(1); MSA 17.237(251)(1). Members of the appeal board are prohibited by law from engaging in investigative or other outside activities so there is no overlap with adjudicative functions. Our review of the record below also indicates no participation by board members in the defendants' case prior to the filing of the appeal.

The most recent decision of the Supreme Court bearing on this due process question is *Hortonville Joint School Dist No 1 v Hortonville Education Ass'n,* 426 US 482; 96 S Ct 2308; 49 L Ed 2d 1 (1976). In *Hortonville,* the Board of Education, with whom a teachers' union had been bargaining for a collective bargaining agreement, instituted disciplinary proceedings to discharge certain members of the union who went on strike. Subsequent hearings were held on the proposed discharges, with the board sitting as decision-maker. The

board eventually discharged the striking teachers because their walkout was illegal under Wisconsin state law. In subsequent proceedings, the Wisconsin Supreme Court held the hearings to be violative of due process, despite the uncontested illegality of the strike. *Hortonville Joint School Dist No 1 v Hortonville Education Ass'n,* 66 Wis 2d 469; 255 NW2d 658 (1975). The range of available disciplinary actions was held by the Wisconsin court to require greater impartiality than that provided by the board.

On appeal, the United States Supreme Court reversed and held the disciplinary proceedings did not violate due process. In so holding, the majority addressed a claim that the board was biased due to its involvement in the prior negotiations. The Court stated:

"Mere familiarity with the facts of a case gained by an agency in the performance of its statutory role does not, however, disqualify a decisionmaker. *Withrow v Larkin,* 421 US 35, 47 [95 S Ct 1456; 43 L Ed 2d 712] (1975); *FTC v Cement Institute,* 333 US 683, 700-703 [68 S Ct 793; 92 L Ed 1010] (1948). Nor is a decisionmaker disqualified simply because he has taken a position, even in public, on a policy issue related to the dispute, in the absence of a showing that he is not 'capable of judging a particular controversy fairly on the basis of its own circumstances.' *United State v Morgan,* 313 US 409, 421 [61 S Ct 999; 85 L Ed 1429] (1941); see also *FTC v Cement Institute, supra,* at 701." 426 US 482, 493.

Finally, in *Mathews v Eldridge,* 424 US 319, 335; 96 S Ct 893; 47 L Ed 2d 18 (1976), the Supreme Court articulated a balancing test to be applied to determine the requirements of due process:

"[I]dentification of the specific dictates of due process generally requires consideration of three distinct fac-

tors; First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. See *e.g., Goldberg v Kelly,* [397 US 254, 263-271; 90 S Ct 1011; 25 L Ed 2d 287 (1970)]."

Applying this test to the instant procedure, we do not find that the composition of the appeal board denied defendants their due process rights. While the private interests of appellants herein are substantial, there is no evidence indicating a risk of erroneous deprivation of such interests or that alternative procedures would offer greater protections. We thus find that the methods for appointment of appeal board members and their random placement on specific panels is not violative of the constitutional right to due process.[1]

Defendants also allege that the appeal board applied an incorrect test to determine the defendants' right to reimbursement from the prior settlement of the plaintiff's tort action. After quoting the statutory provisions covering dual liability and reimbursement, MCL 418.827(1), (5); MSA 17.237(827)(1), (5),[2] the board held:

---

[1] The third factor enumerated in *Mathews, supra,* the state's proprietary and administrative interests in maintaining the present system, is not a substantial consideration in this case. Unlike *Mathews,* in which a substantial change in administrative procedures would have resulted from a holding in favor of the plaintiff, the instant change in the board's makeup would not significantly alter appellate practice within the WCAB.

[2] The statute provides in pertinent part:

"(1) Where the injury for which compensation is payable under this act was caused under circumstances creating a legal liability in some person other than a natural person in the same employ or the employer to pay damages in respect thereof, the acceptance of com-

"The injury for which compensation is payable in this case is the aggravation at work of a prior nonwork-related injury; these are two distinct situations and may not be merged under § 827 as defendant asserts. The employer takes the worker as he finds him and, irrespective of the employee's condition at that time, is responsible for any disability arising out of and in the course of the subsequent employment. This includes the aggravation of a prior nonwork-related debility which that employee has brought with him to the workplace. This is precisely the situation in this case, and defendant's argument is therefore rejected."

The board apparently held the work-related aggravation of plaintiff's injury to be entirely separate from the original damage, thus precluding reimbursement under § 827. Apparently defendants claim that since the plaintiff could have recovered for the work-related aggravation of her knee injury from the tortfeasor, the employer and/or its carrier is entitled to reimbursement or a credit. Defendants cite no four-square authority for

pensation benefits or the taking of proceedings to enforce compensation payments shall not act as an election of remedies but the injured employee or his dependents or personal representative may also proceed to enforce the liability of the third party for damages in accordance with the provisions of this section. If the injured employee or his dependents or personal representative does not commence the action within 1 year after the occurrence of the personal injury, then the employer or carrier, within the period of time for the commencement of actions prescribed by statute, may enforce the liability of such other person in the name of that person.

\* \* \*

"(5) In an action to enforce the liability of a third party, the plaintiff may recover any amount which the employee or his dependents or personal representative would be entitled to recover in an action in tort. Any recovery against the third party for damages resulting from personal injuries or death only, after deducting expenses of recovery, shall first reimburse the employer or carrier for any amounts paid or payable under this act to date of recovery and the balance shall forthwith be paid to the employee or his dependents or personal representative and shall be treated as an advance payment by the employer on account of any future payments of compensation benefits."

this proposition but say that to hold otherwise would approve a windfall to the plaintiff contrary to *Epps v Mercy Hospital,* 69 Mich App 1; 244 NW2d 340 (1976). We believe that the appeal board did not err but that reimbursement is only available where the injury for which compensation is payable under the act was caused by and creates liability in a third party. Defendants claim that the third-party action was settled by the plaintiff before these defendants were aware of the claim against them and, therefore, before they had the opportunity to intervene. We do not think that a timely motion to intervene in the third-party action below would have been granted unless it were alleged that the plaintiff was in the course of her employment when the automobile injury occurred. If the posture of the case came to us on a reverse determination by the appeal board we might have arrived at a different conclusion. In other words, if the defendants had persuaded the appeal board that Dr. Green's testimony regarding plaintiff's disability was solely attributable to the automobile accident, it might lead to a different conclusion. However, in this case the appeal board clearly found otherwise and the basis upon which it formed its conclusion is solidly supported by the record.

Affirmed.