# STATE OF MICHIGAN

# COURT OF APPEALS

JOHN ENGEL and PAM EVANS,

      Appellants,

v

MONITOR TOWNSHIP ZONING BOARD OF
APPEALS,

      Appellee.

UNPUBLISHED
September 13, 2016

No. 327701
Bay Circuit Court
LC No. 14-003651-AA

Before: TALBOT, C.J., and O'CONNELL and OWENS, JJ.

PER CURIAM.

Appellants, John Engel and Pam Evans, appeal as of right the decision of the Monitor Township Zoning Board of Appeals (the Board) to grant a nonuse variance to Kathy and Charles Card. The Cards requested a variance to construct an indoor horse training arena near their property line. We affirm.

## I. FACTUAL BACKGROUND

In May 2014, the Cards requested a variance to construct a 72 foot by 200 foot indoor horse training arena 14 feet from their side property line, which adjoins Engel's and Evans's property. Engel and Evans requested by letter that the Board deny the Cards' request. The requested variance was from Monitor Township Zoning Ordinance, ch V, § 5.04(c), which requires a 100 foot setback for "[f]arm buildings housing animals or poultry." In June 2014, the Board denied the Cards' requested variance because "there are other options."

In August 2014, the Cards submitted a new application for a nonuse variance. They requested the variance from Monitor Township Zoning Ordinance, ch V, § 5.04(b)(3), which requires that "[f]arm buildings not housing animals or poultry shall be at least fifty (50) feet from all property lines." On their new application, the Cards proposed to build the arena 30 feet from the shared property line.

The Board held public meetings to address the Cards' second application. Following the public comment period, the Board rendered its decision. The Board decided that the proper section from which to grant the variance was § 5.04(b)(3) because the arena was not a structure in which animals were fed, bathed, or resided overnight. The Board considered the property's topography and that the Township's Master Plan contemplated preserving farmland, and then

-1-

discussed in detail the difficulties in locating the arena elsewhere on the Cards' property. Ultimately, the Board unanimously voted to approve the variance, finding that

> the Master Plan includes the preservation of agricultural property; the rear acreage of the parcel is better suited for agriculture than development; the 30 foot separation of the structure and the neighbor's lot line will be sufficient and not cause undue hardship; [the variance was] for the purpose of allowing an indoor horse training arena and not to house animals or storage, but solely for agricultural use.

The Board also found that granting the variance met with the spirit of the ordinance, and the property's situation was not so general that it would be practical to form a general regulation to address the condition.

Engel and Evans appealed to the circuit court. In a written opinion, the circuit court concluded that the Board properly considered the Cards' second application because it was different than their first application. It concluded that § 5.04(b)(3) was the appropriate ordinance from which to grant the variance because the horses would not eat, sleep, or bathe in the indoor arena. The circuit court also concluded that substantial evidence supported the Board's decision to grant a variance, and that Monitor Township building inspector Dave Degrow's participation in the proceedings was appropriate because Degrow was not related to or compensated by the Cards.

## II. STANDARDS OF REVIEW

This Court reviews de novo the trial court's decision in an appeal from a zoning board. *Edw C Levy Co v Marine City Zoning Bd of Appeals*, 293 Mich App 333, 340; 810 NW2d 621 (2011). Courts must affirm the decision of a zoning board of appeals unless the decision is contrary to law, based on improper procedure, unsupported by competent, material, and substantial evidence on the record, or an abuse of discretion. *Id*. "Substantial evidence is evidence that a reasonable person would accept as sufficient to support a conclusion." *Id*. at 340-341 (quotation marks and citation omitted). We give deference to the agency's findings of fact. *Id*. at 341. We review de novo the interpretation and application of municipal ordinances. *Great Lakes Society v Georgetown Charter Twp*, 281 Mich App 396, 407; 761 NW2d 371 (2008).

## III. AUTHORITY TO CONSIDER THE APPLICATION

Engel and Evans contend that the Board did not have authority to consider the Cards' second application because it was essentially a rehearing of their first application. We disagree.

Under the Michigan Zoning Enabling Act, townships must create zoning boards of appeal that are responsible for deciding whether to grant variances, among other things. MCL 125.3601; MCL 125.3604(7). A zoning board of appeals does not have power to grant rehearings. *McVeigh v City of Battle Creek*, 350 Mich 214; 86 NW2d 279 (1957). A zoning enabling board which reconsiders its former grant or denial of a variance acts outside its statutory authority. *Kethman v Oceola Twp*, 88 Mich App 94, 102; 276 NW2d 529 (1979).

In this case, the Board did not act outside its authority because it considered a new application; it did not grant a rehearing. The arena's location was different on the Cards' first and second applications—in the first application, the Cards proposed to build the arena 14 feet from the property line, and in the second, they proposed to build the arena 30 feet from the property line. We conclude that the Board did not improperly reconsider its denial of the Cards' first application for a variance.

## IV. APPROPRIATENESS OF THE VARIANCE

First, Engel and Evans contend that the Board applied the wrong ordinance when considering the variance. We disagree.

We apply the rules of statutory interpretation to ordinances. *Great Lakes Society*, 281 Mich App at 407. The purpose of interpretation is to give effect to the intent of the legislative body. *Id*. at 407-408. To do so, we afford terms their plain and ordinary meanings and may consult a dictionary to determine these meanings. *Id*. at 408.

As previously discussed, Monitor Township's Zoning Ordinance provides different requirements for those buildings housing animals or poultry:

> No building or structure nor any enlargement thereof shall be hereafter erected except in conformance with the following yard and lot area requirements. . . .
>
> * * *
>
> (b) Side Yard—
>
> * * *
>
> 3) Farm buildings *not housing* animals or poultry shall be located at least fifty (50) feet from all property lines.
>
> (c) Farm buildings or corrals *housing* animals or poultry shall be located at least one hundred (100) feet from all property lines. [Monitor Township Zoning Ordinance, ch V, § 5.04 (emphasis added).]

The ordinance defines a corral as "[a] pen or enclosure for confining or capturing animals or livestock, but not including an area for grazing of such." Monitor Township Zoning Ordinance, ch II, § 2.27.

We reject Engel's and Evans's assertion that, because the arena confines animals, it is then a corral that necessarily falls under § 5.04(c). The grammar of § 5.04(c) includes an adjectival phrase, "housing animals or poultry," which describes the kind of building or corral to which the section applies. Regardless of whether the arena is a building or corral, it does not fall under § 5.04(c) unless it "hous[es] animals or poultry." Accordingly, the important distinction in this case is whether the arena in question does or does not house the horses.

-3-

The definition of "to house" is instructive. *Merriam-Webster's Collegiate Dictionary* (11 ed) defines the verb "to house" in relevant part as follows: "1 a : to provide with living quarters or shelter  b : to store in a house  2 : to encase, enclose, or shelter as if by putting in a house  3 : to serve as a shelter or container for : CONTAIN . . . ."

It would stretch this definition to conclude that the Cards' horses are housed in the arena. The horses do not live in the arena and they are not stored there. Instead, Karen Card's statements before the board established that the horses train in the arena before they are returned to their respective barns, where they live and are stored. We conclude that the circuit court did not err when it concluded that the Board applied the appropriate section when granting a variance.

Second, Engel and Evans contend that competent, material, and substantial evidence did not support the Board's decision to grant the variance. Again, we disagree.

A variance is "a license to use property in a way that would not be permitted under a zoning ordinance." *Frericks v Highland Twp*, 228 Mich App 575, 582; 579 NW2d 441 (1998). A variance may be a use variance or a nonuse variance. *Nat'l Boatland, Inc v Farmington Hills Zoning Bd of Appeals*, 146 Mich App 380, 387; 380 NW2d 472 (1985). Nonuse variances are those variances concerned with the area, height, and setback requirements of structures. *Id*.

A zoning board of appeals has "authority to grant nonuse variances . . . ." MCL 125.3604(8). MCL 125.3604(7) sets forth the conditions for granting a variance:

> If there are practical difficulties for nonuse variances as provided in [MCL 125.3604(8)] or unnecessary hardship for use variances as provided in [MCL 125.3604(9)] in the way of carrying out the strict letter of the zoning ordinance, the zoning board of appeals may grant a variance in accordance with this section, so that the spirit of the zoning ordinance is observed, public safety secured, and substantial justice done. . . .

The Monitor Township Zoning Ordinance contains procedures for processing and granting variances in § 18.10, which provides as follows:

> Where there are practical difficulties or unnecessary hardship in carrying out the strict letter of this Ordinance, the Zoning Board of Appeals shall have power to vary or modify any of the provisions hereof so that the spirit of the Ordinance shall be observed, public safety promoted, and substantial justice done. The Zoning Board of Appeals may grant such variances only upon finding that all of the following conditions exist:
>
> (a)    Where it is found that, by reason of the exceptional narrowness, shallowness or shape of a specific parcel or property or by reason of exceptional topographic conditions or other extraordinary situation of the land or structure or of the use of property immediately adjoining the property in question, the literal enforcement of this Ordinance would involve practical difficulties or would cause undue hardship . . . .

-4-

(b)      Where it is found that there is practical difficulty or unnecessary hardship in carrying out the strict letter of this Ordinance and a request is made to vary such regulations so that the spirit of this Ordinance shall be observed, public safety secured, and substantial justice done.

(c)      Where it is found that the condition or situation of the specific piece of property or the intended use of said property for which the variance is sought is not so general or recurrent in nature as to make reasonably practicable the formulation of a general regulation for such condition or situation in this Ordinance.

Although the ordinance requires a finding of "practical difficulties or unnecessary hardship," practical difficulties under the Act relate to nonuse variances and unnecessary hardship pertains to use variances. MCL 125.3604(7). Accordingly, "practical difficulty" is the relevant standard for the Cards' nonuse variance, not whether—as Engel and Evans contend—alternative placement of the arena was impossible.

Engel and Evans contend that, contrary to Degrow's testimony, the property was not 60% floodplain, and that a 250-foot difference in the distance between the arena and horse barns would not present a practical difficulty. They also argue that, contrary to the Board's findings, the nearness of the arena would work a substantial detriment on their property.

The record supports the Board's findings on these issues. At the meetings in this case, Engel and Evans expressed their belief that the Cards could not demonstrate a hardship because their parcel contained 28 acres. The Board discussed alternate locations on the property on which the Cards could build their horse arena. Degrow, Monitor Township's building inspector, gave several reasons why the Board should grant the Cards a variance. Degrow opined that 60% of the Cards' property was floodplain, and 45% to 50% was wetlands. Degrow stated that building the arena elsewhere on the property would require building it on farmed pasture or fields. Michelle Kostraba, the owner of a horse farm in Saginaw County, also opined that the Cards' arena was necessary for training horses in Michigan because horses "need to be worked year round," and the weather often prevents that. Kostraba opined that building the arena in the alternative location in the hayfield would be problematic in the winter because it would require the Cards to move hot, sweaty horses long distances in the cold.

Engel's and Evans's arguments regarding the appropriateness of the variance boil down to issues of credibility. This Court defers to findings regarding credibility in zoning board of appeals cases because we are not in the best position to test the credibility of witnesses. *Marcenas v Village of Michiana*, 433 Mich 380, 392; 446 NW2d 102 (1989). We conclude that competent, material, and substantial evidence in the record supported the Board's findings.

## V. PARTICIPATION OF DEGROW

Finally, Engel and Evans argue that Degrow's participation in the proceedings was inappropriate and denied them due process. We disagree.

A party has a due process right to a hearing before a fair and impartial tribunal. *Pitoniak v Borman's Inc*, 104 Mich App 718, 722; 305 NW2d 305 (1981). "Duress occurs in the land use,

administrative context when the decision maker is improperly pressured to serve an interest other than that of the voters, taxpayers, members of the general public, justice, and due process." *Hughes v Almena Twp*, 284 Mich App 50, 76; 771 NW2d 453 (2009) (quotation marks and citation omitted). The question is whether the officer appearing before the board had a personal interest in the matter. *Id*. at 76.

In this case, Degrow was a contractual employee of the Township. As an employee, he owed a duty of loyalty to the public. See *Macomb Co Prosecutor v Murphy*, 464 Mich 149, 164; 627 NW2d 247 (2001). However, Engel and Evans have failed to provide evidence that Degrow had a personal interest in this case. He was not related to or receiving compensation from the Cards. More importantly, there is no indication that Degrow improperly pressured the Board to reach its decision in this case. To the contrary, the Board treated Degrow's statements with the same scrutiny that it treated others offering opinions and comments. We conclude that Degrow's involvement in the case did not deprive Engel and Evans of a fair hearing.

We affirm.

/s/ Michael J. Talbot
/s/ Peter D. O'Connell
/s/ Donald S. Owens