CITY OF LIVONIA v DEPARTMENT OF SOCIAL SERVICES

Docket No. 59112. Submitted October 8, 1982, at Detroit.—Decided
February 8, 1983. Leave to appeal applied for.

The City of Livonia and certain home owners and residents in the
Sunset Hills Subdivision brought an action in the Wayne
Circuit Court against the Department of Social Services, Hu-
man Services and Aftercare, Inc., and others to enjoin the
issuance of a license by the department to Human Services and
Aftercare for the use of certain property in Sunset Hills as an
adult foster care small group home for six or fewer persons.
The proposed residents of that facility were permitted to inter-
vene as defendants. The court, Roland L. Olzark, J., granted
summary judgment dismissing the lawsuit. Plaintiffs appealed.
*Held:*

1. An applicant for a license to operate an adult foster care
small group home for the care of six or fewer persons is exempt
from local zoning ordinances prohibiting such use in residential
areas.

2. The statute exempting foster care facilities for six or fewer
persons does not unconstitutionally divest home rule cities of
their constitutional and statutory zoning authority. Local zon-
ing ordinances are subordinate to other permissible legislative
enactments.

3. The test of whether a law violates the title-object clause of

REFERENCES FOR POINTS IN HEADNOTES

[1] 82 Am Jur 2d, Zoning and Planning §§ 114, 158-160.
Validity of ordinance restricting number of unrelated persons who
can live together in residential zone. 12 ALR4th 238.
What is lodging house or boarding house within provisions of
zoning ordinance or regulation. 64 ALR2d 1167.
[2] 82 Am Jur 2d, Zoning and Planning § 7, 8.
[3] 73 Am Jur 2d, Statutes § 111 *et seq.*
[4, 5] 73 Am Jur 2d, Statutes § 130.
[6, 7] 1 Am Jur 2d, Administrative Law § 117.
[8] 51 Am Jur 2d, Licenses and Permits §§ 4, 5.
[9] 2 Am Jur 2d, Administrative Law §§ 279, 280.
[10] 2 Am Jur 2d, Administrative Law § 412.
[11] 82 Am Jur 2d, Zoning and Planning § 13.
[12] 20 Am Jur 2d, Covenants, Conditions, and Restrictions § 182.

the constitution is whether it embraces subjects diverse in their nature and having no necessary connection.

4. The statute providing enabling authority for municipal adoption of zoning ordinances is not violative of the title-object clause for having been amended to exempt from zoning regulations certain state-licensed residential facilities. The statute providing for the licensing and regulation of adult foster care facilities is not violative of the title-object clause.

5. The guiding principles in determining whether a statute provides sufficient standards for the exercise of discretion by an administrative official are: (1) the provision in question should not be isolated but must be construed with reference to the entire act; (2) the standard should be as reasonably precise as the subject matter requires or permits; and (3) if possible the statute must be construed in such a way as to render it valid, not invalid, as conferring administrative, not legislative power, and as vesting discretionary, not arbitrary, authority. The statutes proscribing the licensure of community residential foster care facilities where such licensure would substantially contribute to an excessive concentration of such facilities are not unconstitutional for lack of standards.

6. Procedural irregularities in fulfilling statutory notice requirements are not grounds for reversal of an administrative action absent a showing of material prejudice. In this case, noncompliance with the statutory notice requirements does not result in prejudice to plaintiffs.

7. A member of a state agency is not disqualified as a decision maker in matters brought before the agency for decision merely because the agency has gained familiarity with the facts of a case in the performance of its statutory role. The dual role of the Department of Social Services as investigator and adjudicator does not per se violate the guarantee of due process.

8. A property owner does not have a vested property interest in an established zoning entitling him to due process protection from change.

9. Deed restrictions may not interfere with the public policy of establishing community housing for the handicapped.

10. The grant of summary judgment was proper.

Affirmed.

1. SOCIAL SERVICES — ADULT FOSTER CARE — ZONING.

An applicant for a license to operate an adult foster care small group home for the care of six or fewer persons is exempt from

local zoning ordinances prohibiting such use in residential areas (MCL 125.583b; MSA 5.2933[2]).

2. ZONING — SUBORDINATION OF ZONING ORDINANCES.

Local zoning ordinances are subordinate to legislative enactments.

3. CONSTITUTIONAL LAW — TITLE-OBJECT CLAUSE — STATUTES.

The title-object clause in the constitution provides that a law shall not embrace more than one object and that the object which the law embraces shall be expressed in its title (Const 1963, art 4, § 24).

4. CONSTITUTIONAL LAW — TITLE-OBJECT CLAUSE — ZONING.

The test of whether a law violates the title-object clause of the constitution is whether it embraces subjects diverse in their nature and having no necessary connection; the statute providing enabling authority for municipal adoption of zoning ordinances is not violative of the title-object clause for having been amended to exempt from zoning regulations certain state-licensed residential facilities; the statute providing for the licensing and regulation of adult foster care facilities is not violative of the title-object clause (Const 1963, art 4, § 24; 1921 PA 207; 1976 PA 396; 1979 PA 218).

5. CONSTITUTIONAL LAW — TITLE-OBJECT CLAUSE — AMENDMENTS.

The title of an act is not required to be an index of all its provisions, and where an act centers on one main, general object or purpose which its title comprehensively declares in general terms and its provisions, including amendments to the act, although not directly mentioned, are germane, auxiliary, or incidental to its general purpose, the act meets the requirements of the title-object clause (Const 1963, art 4, § 24).

6. ADMINISTRATIVE LAW — DELEGATION OF POWERS.

In determining whether the limits on the exercise of discretion conferred on an administrative official are sufficiently defined to avoid delegation of legislative powers, it must be borne in mind that standards must be sufficiently broad to permit efficient administration in order to properly carry out the policy of the Legislature but not so broad as to leave the people unprotected from uncontrolled, arbitrary power in the hands of the administrative official.

7. ADMINISTRATIVE LAW — DELEGATION OF POWERS.

The guiding principles in determining whether a statute provides sufficient standards for the exercise of discretion of an adminis-

trative official are: (1) the provision in question should not be isolated but must be construed with reference to the entire act; (2) the standard should be as reasonably precise as the subject matter requires or permits; and (3) if possible the statute must be construed in such a way as to render it valid, not invalid, as conferring administrative, not legislative, power and as vesting discretionary, not arbitrary, authority.

8. Social Services — Community Residential Foster Care Facilities — Constitutional Law.

The statutes proscribing the licensure of community residential foster care facilities where such licensure would substantially contribute to an excessive concentration of such facilities are not unconstitutional for lack of standards (1977 PA 28, § 3b[4]; 1979 PA 218, § 16[1]).

9. Administrative Law — Notice.

Procedural irregularities in fulfilling statutory notice requirements are not grounds for reversal of an administrative action absent a showing of material prejudice.

10. Administrative Law — Due Process — Impartial Tribunals.

A member of a state agency is not disqualified as a decision maker in matters brought before the agency for decision merely because the agency has gained familiarity with the facts of a case in the performance of its statutory role; nor is a decision maker disqualified simply because he has taken a position, even in public, on a policy issue related to a dispute, absent a showing that he is not capable of judging the particular controversy fairly on the basis of its own circumstances.

11. Zoning — Due Process.

A property owner does not have a vested property interest in an established zoning entitling him to due process protection from change.

12. Covenants — Deed Restrictions — Public Policy.

Deed restrictions may not interfere with the public policy of establishing community housing for the handicapped.

*Harry C. Tatigian,* City Attorney, for plaintiffs-appellants.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Janice Meija* and

*William K. Basinger,* Assistants Attorney General, for defendant.

*Jon R. Garrett, P.C.,* for defendant Human Services and Aftercare, Inc.

*Michael J. Kiley,* for intervening defendants-appellants.

Before: DANHOF, C.J., and N. J. KAUFMAN and D. C. RILEY, JJ.

D. C. RILEY, J. Plaintiffs, City of Livonia and certain home owners and residents in the Sunset Hills Subdivision, appeal the trial court's order of summary judgment dismissing their suit to enjoin the issuance of a license by the defendant, Department of Social Services (department) to the defendant Human Services and Aftercare, Inc. (applicant), for immediate use of certain premises situated in the Sunset Hills Subdivision in the City of Livonia as an adult foster care small group home for six or fewer persons, or, in the alternative, to enjoin the use of the premises by the applicant in violation of state and local law or building and use restrictions. Plaintiffs raise a plethora of issues which we consider *seriatim.*

## I. EXEMPTION FROM LOCAL ZONING ORDINANCES

At the outset, we reject plaintiffs' contention that the applicant must comply with the Livonia zoning ordinance which prohibits residentially zoned property, such as that involved in this case, from being used for adult foster care homes. Our Legislature has provided that adult foster care small group homes, caring for six or less persons, shall be exempt from local residential single-fam-

ily zoning restrictions and, therefore, may be legally licensed by the defendant department under the Adult Foster Care Facility Licensing Act, 1979 PA 218, MCL 400.701 *et seq.;* MSA 16.610(51) *et seq.,* in a residentially zoned area. In licensing the adult foster care small group home in the instant case, the defendant department relied upon § 3b of 1921 PA 207 as amended by 1976 PA 396 as amended by 1977 PA 28, MCL 125.583b; MSA 5.2933(2), for the necessary zoning exemption.

That statute provides in pertinent part as follows:

"Sec. 3b. (1) As used in this section, 'state licensed residential facility' means a structure constructed for residential purposes that is *licensed by the state pursuant to Act No. 287 of the Public Acts of 1972,* as amended, being sections 331.681 to 331.694 of the Michigan Compiled Laws, or Act No. 116 of the Public Acts of 1973 as amended, being sections 722.111 to 722.128 of the Michigan Compiled Laws, which provides resident services for 6 or less persons under 24-hour supervision or care for persons in need of that supervision or care.

"(2) In order to implement the policy of this state that persons in need of community residential care shall not be excluded by zoning from the benefits of normal residential surroundings, a state licensed residential facility providing supervision or care, or both, to 6 or less persons shall be considered a residential use of property for the purposes of zoning and a permitted use in all residential zones, including those zoned for single family dwellings, and shall not be subject to a special use or conditional use permit or procedure different from those required for other dwellings of similar density in the same zone." (Emphasis added.)

Under this statute, the applicants are exempt from the Livonia zoning ordinance.

We also reject plaintiffs' contention that the exemption from local zoning ordinances previously

granted state licensed residential facilities by § 3b was abolished with the adoption of the new Adult Foster Care Facility Licensing Act, 1979 PA 218, which replaced and repealed 1972 PA 287. Plaintiffs reason that, since the Legislature, when repealing 1972 PA 287, failed to change the statutory reference in § 3b of 1921 PA 207, state licensed adult foster care facilities are no longer exempted by statute from local zoning ordinances. We disagree. It is readily apparent that, when the Legislature granted exemptions to adult foster care facilities, it was careful to limit that exemption to those facilities which were state licensed and which, in addition, cared for six or fewer persons; hence, the reference in § 3b(1) to 1972 PA 287. This statutory reference was only necessary for the informational purpose of indicating under what statute such facilities were *then* state licensed. The mere fact that such facilities are now licensed under a different statute is not sufficient reason to hold that the exemption of § 3b(1) is no longer applicable.

In a very similar case, *Livonia v Dep't of Social Services,* 119 Mich App 806; 328 NW2d 1 (1982), another panel of this Court rejected this identical argument for the reasons stated in *Brandon Twp v North-Oakland Residential Services, Inc,* 110 Mich App 300, 306-307; 312 NW2d 238 (1981). The controversy in *Brandon Twp* centered around § 16a of the township rural zoning act, MCL 125.286a(2); MSA 5.2963(16a)(2), which, like MCL 125.583b; MSA 5.2933(2), provided an exemption from township zoning ordinances to state licensed residential facilities and also defined "state licensed residential facility" by reference to 1972 PA 287. The *Brandon Twp* Court rejected the argument that the exemption from local zoning applied only to

adult foster care facilities licensed under the old act.

"Since the old [Adult Foster Care Facility Licensing Act] was repealed, all adult foster care facilities will be licensed under the new act, and the construction fostered by plaintiff would render § 16a a nullity, a highly disfavored result. See *Thomas v Consumers Power Co*, 58 Mich App 486; 228 NW2d 786 (1975). The failure to amend subsection (1) of § 16a of the [township rural zoning act] must be viewed as a legislative oversight, since the Legislature's expressed intent in enacting § 16a was to 'implement the policy of this state that persons in need of community residental *[sic]* care shall not be excluded by zoning * * *'." *Brandon Twp, supra,* pp 306-307.

We are in accord with this reasoning and the result in *Livonia v Dep't of Social Services, supra,* and, therefore, conclude that the enactment of 1979 PA 218 did not abolish the provision of § 3b exempting state licensed residential facilities providing care for six or fewer persons from local zoning regulations.

Our conclusion is supported by the fact that the new licensing statute, MCL 400.716(2); MSA 16.610(66)(2) provides:

"A temporary license shall not be granted under this act if the proposed adult foster care facility for more than 6 adults has not obtained zoning approval or obtained a special or conditional use permit if required by an ordinance of the city, village, or township in which the proposed facility is located."

The clear implication of this language is that the Legislature intended that facilities housing six or fewer persons need not obtain local zoning approval.

We are not persuaded by plaintiffs' alternative argument that, if the exemption from local zoning regulations for facilities which provide care for six or fewer persons, as provided by 1921 PA 207 as amended, is still valid, it is inapplicable to the case at bar as the premises in question is a "small group home" which, by definition, has capacity for 12 adults and, therefore, is not within the scope of the exemption which only applies to structures providing resident services for 6 or fewer persons.

Section 3b of 1921 PA 207 as amended requires that a state licensed residential care facility "providing supervision or care, or both, to 6 or less persons" be considered a residential use by local governments. Plaintiffs' argument overlooks the fact that this statute does not provide that facilities must be "licensed" for the care of six or fewer to be considered residential uses; rather, the criterion is whether a facility is actually providing care to six or fewer persons. The exemption is obviously concerned with the number of residents actually living in the facility, not the number of potential residents. See *Brandon Twp, supra,* p 309. Moreover, the applicant in the case at bar only sought a license for a facility to care for six or fewer persons and, therefore, the small group home license issued by defendant department was restricted to six or fewer persons. Our conclusion in this regard is supported by the statutory provisions under the new Adult Foster Care Facility Licensing Act. MCL 400.713(5); MSA 16.610(63)(5) requires a license for an adult foster care facility to state the maximum number of persons to be received for foster care at one time. Any increase beyond six in the number of persons to be received for foster care at one time in a small group home requires application for a temporary license. MCL

400.719(3); MSA 16.610(69)(3). A proposed adult foster care facility for more than six adults must obtain zoning approval or obtain a special or conditional use permit if required by a local ordinance before a temporary license can be granted. MCL 400.716(2); MSA 16.610(66)(2). Thus, if a structure has the capacity for more than six residents, it may not expand beyond six without conforming to local zoning ordinances. Therefore, limiting the exemption to family homes is not necessary to insure that facilities with more than six residents will comply with zoning ordinances.

## II. UNCONSTITUTIONAL DIVESTITURE OF HOME RULE CITIES' INHERENT ZONING AUTHORITY

Next, plaintiffs claim that, in the alternative, § 3b unconstitutionally divests home rule cities of constitutional and statutory authority to enact, pursuant to their police power, a zoning ordinance regulating property concerns purely local in nature. Plaintiffs rely upon Const 1963, art 7, § 22 which provides in pertinent part as follows:

"Each * * * city and village shall have power to adopt resolutions and ordinances relating to its municipal concerns, property and government, subject to the constitution and law."

It must be noted that, under the provision of this section, the authority of cities to adopt ordinances is expressly made subject to law and, therefore, where a local ordinance is contrary to state law, as it is here, the state law prevails.

In *Brandon Twp, supra,* an argument similar to plaintiffs' was raised and the Court discussed the question of whether the state Legislature could reverse zoning restrictions imposed by municipal

ordinance with respect to the exemption for adult foster care facilities. The Court held:

"It can be stated as a general principle of law that local zoning ordinances are subordinate to otherwise permissible legislative enactments. See *Dearden v Detroit,* 403 Mich 257; 269 NW2d 139 (1978)." *Brandon Twp, supra,* pp 304-305.

Thus, we conclude that § 3b of 1921 PA 207 as amended does not unconstitutionally divest plaintiff city of any inherent zoning authority.

### III. TITLE-OBJECT CLAUSE

Const 1963, art 4, § 24 states:

"Sec. 24. No law shall embrace more than one object, which shall be expressed in its title. No bill shall be altered or amended on its passage through either house so as to change its original purpose as determined by its total content and not alone by its title."

This constitutional provision embraces two separate concepts: (1) that the law shall not embrace more than one object; and (2) that the object which the law embraces shall be expressed in its title. *Advisory Opinion on Constitutionality of 1975 PA 227 (Question 1),* 396 Mich 123, 128; 240 NW2d 193 (1976).

Plaintiff city contends first that 1921 PA 207 has a one-object concept—to establish enabling authority for municipal adoption of a zoning ordinance. Thus, amendment thereof by 1976 PA 396 to include a substantive regulatory provision exempting state licensed residential facilities from zoning ordinances violates the one-object limitation of Const 1963, art 4, § 24.

With regard to the proper test for determining whether a particular statute violates the single-object clause, the Michigan Supreme Court noted:

"Justice Cooley in *People ex rel Drake v Mahaney,* 13 Mich 481 (1865), says with respect to the same provision of the Constitution of 1850:

" 'The history and purpose of this constitutional provision are too well understood to require any elucidation at our hands. The practice of bringing together into one bill subjects diverse in their nature, and having no necessary connection, with a view to combine in their favor the advocates of all, and thus secure the passage of several measures, no one of which could succeed upon its own merits, was one both corruptive of the legislator and dangerous to the state.' *Mahaney, supra,* 494-495." *Advisory Opinion on Constitutionality of 1975 PA 227 (Question 1), supra,* pp 131-132.

Thus, the single-object clause is only violated where "subjects diverse in their nature and having no necessary connection" are included in an act. It is clear that where an act such as 1921 PA 207 confers certain powers, a subsequent amendment thereto defining and regulating those powers cannot be said to be diverse in nature from or unconnected with the object of the act. Therefore, we conclude that the single-object clause is not violated by 1921 PA 207 as amended.

Next, plaintiffs contend that 1979 PA 218 embraces more than one object which is not stated in its title and, therefore, is violative of Const 1963, art 4, § 24.

Plaintiffs correctly observe that the stated object of 1979 PA 218 is to

"provide for the licensing and regulation of adult foster care facilities; to provide for the establishment of stan-

dards of care for adult foster care facilities; to prescribe powers and duties of the department of social services and other departments; to prescribe penalties; and to repeal certain acts and parts of acts."

Plaintiffs contend, however, that the provisions of the act exceed this object in that they preempt local building or housing maintenance codes that might otherwise apply to certain adult foster care homes. Plaintiffs further contend that this object is not stated in the title of the act.

As noted above, the single-object clause is violated only when subjects diverse in their nature which have no necessary connection are included in the act. In the case at bar, the preemption of local regulation is directly related to, and is necessary to the implementation of, the principal object of providing state licensing and regulation of adult foster care facilities. In regard to plaintiffs' claim that the object of the act was not stated in its title, "[t]he title of an act is not required to be an index of all its provisions". *Commuter Tax Ass'n of Metropolitan Detroit v Detroit,* 109 Mich App 667, 671; 311 NW2d 449 (1981), *lv den* 411 Mich 1065 (1981). The constitutional requirement that the object be expressed in the title is met "if the act centers to one main general object or purpose which the title comprehensively declares, though in general terms, and if provisions in the body of the act not directly mentioned in the title are germane, auxiliary or incidental to that purpose * * *". *Commuter Tax Ass'n, supra,* p 672, quoting *Loomis v Rogers,* 197 Mich 265, 271; 163 NW 1018 (1917). While preemption of certain local regulations is not specifically mentioned in the title, such preemption is clearly germane to the stated purpose of the act which is to provide for the licensing and regulation of adult foster care facilities.

## IV. STANDARDS

Next, plaintiff city contends that 1977 PA 28, § 3b(4) and 1979 PA 218, § 16(1) are unconstitutional for lack of standards.

1979 PA 218, § 16(1) provides in part:

"Unless the city, village, or township approves a temporary license, a temporary license shall not be granted under this act if the issuance of the license would substantially contribute to an excessive concentration of community residential facilities within a city, village, or township of this state." MCL 400.716(1); MSA 16.610(66)(1).

Further, § 16(3) provides that:

"The department shall not issue a temporary license to an adult foster care facility which does not comply with * * * section 3b of Act No. 207 of the Public Acts of 1921, as amended, being section 125.583b of the Michigan Compiled Laws." MCL 400.716(3); MSA 16.610(66)(3).

As § 16 incorporates the requirements of 1921 PA 207, § 3b(4), it must be read *in pari materia* therewith:

"(4) At least 45 days before licensing a residential facility described in subsection (1), the state licensing agency shall notify the council of the city or village or the designated agency of the city or village where the proposed facility would be located to review the number of existing or proposed similar state licensed residential facilities whose property lines are within a 1,200 foot radius of the property lines of the location of the applicant. The council of a city or village or an agency of the city or village to which the authority is delegated shall, when a proposed facility is to be located within the city or village, give appropriate notification of the

proposal to license the facility to those residents whose property lines are within a 1,500 foot radius of the property lines of the proposed facility. A state licensing agency shall not license a proposed residential facility when another state licensed residential facility exists within the 1,500 foot radius, unless permitted by local zoning ordinances, of the proposed location or when the issuance of the license would substantially contribute to an excessive concentration of state licensed residential facilities within the city or village. In a city with a population of 1,000,000 or more a state licensing agency shall not license a proposed residential facility when another state licensed residential facility exists within a 3,000 foot radius of the proposed location. This subsection shall not apply to state licensed residential facilities caring for 4 or less minors." MCL 125.583b(4); MSA 5.2933(2)(4).

Plaintiffs argue that these statutes constitute an unconstitutional delegation of legislative power to an administrative agency as the delegation fails to provide the defendant department standards to aid in determining the meaning of "excessive concentration". *Westervelt v Natural Resources Comm,* 402 Mich 412; 263 NW2d 564 (1978). We disagree.

In *Dep't of Natural Resources v Seaman,* 396 Mich 299, 308-309; 240 NW2d 206 (1976), the Court set forth the applicable principles for determining whether a given statute has provided sufficient standards.

"In making this determination whether the statute contains sufficient limits or standards we must be mindful of the fact that such standards must be sufficiently broad to permit efficient administration in order to properly carry out the policy of the Legislature but not so broad as to leave the people unprotected from uncontrolled, arbitrary power in the hands of administrative officials.

"While no hard and fast rule exists for determining whether a given statute has provided sufficient stan-

dards, a number of guiding principles have evolved in Michigan jurisprudence to assist in making a determination in this case.

"First, the act in question must be read as a whole; the provision in question should not be isolated but must be construed with reference to the entire act. *Argo Oil Corp v Atwood,* 274 Mich 47, 53; 264 NW 285 (1935).

"Second, the standard should be 'as reasonably precise as the subject matter requires or permits'. *Osius v St Clair Shores,* 344 Mich 693, 698; 75 NW2d 25; 58 ALR2d 1079 (1956).

"The preciseness of the standard will vary with the complexity and/or the degree to which subject regulated will require constantly changing regulation. * * *

"Third, if possible the statute must be construed in such a way as to 'render it valid, not invalid', as conferring 'administrative, not legislative' power and as vesting 'discretionary, not arbitrary, authority'. *Argo Oil Corp v Atwood, supra,* 53." (Footnote omitted.)

Applying these principles to the case at bar, it is clear that the licensing and regulation of adult foster care residential facilities is a subject that requires some degree of flexibility. The Legislature has established, by statute, a specific maximum density for adult foster care facilities. The "excessive concentration" criteria is only applicable to situations where the concentration of homes is allegedly excessive even though it satisfies the statutory maximum density. Any attempt to specifically set forth further criteria for determining whether excessive concentration has occurred would be impractical as the level of permissible concentration may well vary according to the constantly changing demographic characteristics of a particular community. Such a determination inherently requires the exercise of some limited discretion. We hold that, under the present scenario, the defendant department is permitted to

exercise such discretion while it is prohibited from acting arbitrarily and, therefore, we find that these statutes are valid as they confer administrative and not legislative power and as they vest discretionary and not arbitrary authority. Our conclusion in this regard is bolstered by the rule of statutory construction which requires this Court to afford a statute the presumption of constitutionality and to construe it as constitutional unless the contrary clearly appears. *People v McQuillan,* 392 Mich 511; 221 NW2d 569 (1974).

## V. PLACEMENT OF MENTALLY ILL PERSONS IN ADULT FOSTER CARE SMALL GROUP HOMES

Next, plaintiffs would have us hold that a license may not properly issue under 1979 PA 218 for an adult foster care small group home where the intended use of the facility is for individuals who suffer from "mental illness". We find that it is unnecessary to address the merits of this claim as the record in the case at bar reveals that the defendant residents who plan to reside at this home are "mentally retarded" persons and are not "mentally ill". There is no question but that such individuals are eligible for placement in adult foster care small group homes.

## VI. NOTICE

Plaintiffs further contend that the defendant department failed to comply with the notice provisions of 1977 PA 28, § 3b(4) and 1979 PA 218, § 32(1). These sections require that the defendant department provide notice to the city council and the city clerk or to a designated agency as to where a proposed state licensed residential facility

is to be located, at least 45 days prior to issuance of a license for such a facility.

This Court has held that procedural irregularities in fulfilling statutory notice requirements are not grounds for reversal of an administrative action absent a showing of material prejudice. *Montiy v East Detroit Civil Service Board,* 54 Mich App 510, 516; 221 NW2d 248 (1974).

While it is clear, from a review of the record, that the defendant department failed to provide strict compliance with these sections by sending notice to the Livonia City Council, it is equally clear that the council had actual notice of the proposed license well in advance of 45 days before the license was issued. The record reveals that on January 26, 1981, the plaintiff city's Bureau of Inspection had received notice of the license application. Furthermore, on April 1, 1981, the plaintiff city filed the complaint in the instant action seeking declaratory or injunctive relief enjoining the defendant department from issuing a license for the operation of the proposed facility. Inasmuch as the lower court's temporary restraining order was not dissolved until July 20, 1981, licensure did not occur until well beyond 45 days after the plaintiff city had actual notice of the proposed facility and, therefore, plaintiffs cannot claim that they were materially prejudiced. We find that the intent of the statutory notice provision was fulfilled and the defendant department's failure to comply with the literal terms of the statutory notice provisions does not mandate reversal.

## VII. Due Process and Equal Protection

Next, plaintiffs raise a three-pronged attack on the constitutionality of 1921 PA 207 and 1979 PA 218. Under the Adult Foster Care Facility Licens-

ing Act, MCL 400.723(3); MSA 16.610(73)(3), the department is authorized to issue a license before resolution of a complaint filed by a municipality. Plaintiffs contend that they are placed in the disadvantaged position of trying to reverse a situation which is already *fait accompli.* Plaintiffs, however, cite no authority or policy considerations in support of their contention and, therefore, they have abandoned this argument. *Brooks v January,* 116 Mich App 15, 31; 321 NW2d 823 (1982).

Secondly, plaintiffs argue that the act fails to afford the parties a hearing before a fair and impartial tribunal in violation of the procedural guarantees of due process and equal protection of the laws as guaranteed by the Fourteenth Amendment to the United States Constitution. This claim is based upon the dual investigative and adjudicative function of the director of defendant department, pursuant to MCL 400.723, 400.724; MSA 16.610(73), 16.610(74). In support of this position, plaintiffs cite *Pitoniak v Borman's, Inc,* 104 Mich App 718, 724; 305 NW2d 305 (1981), which quoted *Crampton v Dep't of State,* 395 Mich 347; 235 NW2d 352 (1975), for the proposition that the potential for prejudice is "too great a risk * * * where a judge or decision-maker * * * 'might have prejudged the case because of prior participation as an accuser, investigator, fact finder or initial decision maker.' "

In discussing the foregoing statement, the *Pitoniak* Court cited *Hortonville Joint School Dist No 1 v Hortonville Education Ass'n,* 426 US 482; 96 S Ct 2308; 49 L Ed 2d 1 (1976). In *Hortonville,* the United States Supreme Court upheld the constitutionality against a due process challenge of a similar procedure wherein a school board discharged striking teachers and then subsequently

sat as a decision maker during the disciplinary proceedings. In finding no violation of due process, the Court held:

" 'Mere familiarity with the facts of a case gained by an agency in the performance of its statutory role does not, however, disqualify a decisionmaker. *Withrow v Larkin,* 421 US 35, 47 [95 S Ct 1456; 43 L Ed 2d 712] (1975); *FTC v Cement Institute,* 333 US 683, 700-703 [68 S Ct 793; 92 L Ed 2d 1010] (1948). Nor is a decisionmaker disqualified simply because he has taken a position, even in public, on a policy issue related to the dispute, in the absence of a showing that he is not "capable of judging a particular controversy fairly on the basis of its own circumstances." *United States v Morgan,* 313 US 409, 421 [61 S Ct 999; 85 L Ed 2d 1429] (1941); see also *FTC v Cement Institute, supra,* p 701.' 426 US 482, 493." 104 Mich App 727.

The instant case clearly falls within the *Hortonville* rule. The director of the department had issued a response to plaintiff's complaint pursuant to its investigative powers under MCL 400.724; MSA 16.610(74). The director subsequently rendered judgment on plaintiff's complaint. There was no showing by plaintiff that the director was incapable of rendering a fair decision. Hence, under *Hortonville,* the director's dual role as investigator and decision maker does not, in itself, violate due process.

Lastly, plaintiffs submit that the individual homeowners included in this litigation have been deprived of substantial property interests, in violation of due process, as they were not afforded a hearing before they were deprived of their property interests, presumably by the zoning exemption which would allow the foster home to be licensed. We disagree.

Before any procedural due process protection

attaches, one must demonstrate an interest within the contemplation of the "liberty or property" language of the Fourteenth Amentment. *Morrissey v Brewer,* 408 US 471; 92 S Ct 2593; 33 L Ed 2d 484 (1972); *Dow v Michigan,* 396 Mich 192, 202-203; 240 NW2d 450 (1976). Property owners have no vested rights in the zoning of their property. *Baker v Algonac,* 39 Mich App 526, 535; 198 NW2d 13 (1972). "No owner has a right in the continuance of a zoning once established." *Lamb v City of Monroe,* 358 Mich 136, 147; 99 NW2d 566 (1959). Thus, we conclude that the mere fact that the individual plaintiffs may have relied upon the continuance of existing zoning does not give them a vested property interest entitling them to due process protection.

## VIII. BUILDING AND USE RESTRICTIONS

Next, plaintiffs contend that the use of the premises as a state licensed residential facility will violate duly recorded building and use restrictions which, among other things, require that the subject property be used for single family residential purposes. Plaintiffs further contend that a judicial determination that 1977 PA 28 vitiated these deed restrictions would constitute a violation of the constitutional prohibition against impairment of contractual obligations. US Const, art I, § 10; Const 1963, art 1, § 10.

The restrictions provide in relevant part:

"No lot shall be used except for residential purposes. No building shall be erected, altered, placed or permitted to remain on any lot other than one detached single-family dwelling not to exceed two and one-half stories in height and a private garage for not more than two cars."

Restrictive covenants are to be strictly construed in adherence to the long-standing principle that land should be freely alienable. Moreover, the deed restrictions cannot interfere with the public policy of this state to establish community housing for the handicapped. *Bellarmine Hills Ass'n v Residential Systems Co,* 84 Mich App 554; 269 NW2d 673 (1978).

While restrictive covenants identical to the one in the case at bar have been interpreted as restricting property to single-family use, *Bellarmine Hills, supra; Malcolm v Shamie,* 95 Mich App 132; 290 NW2d 101 (1980), the Michigan courts have consistently given a liberal construction of the word "family" when used in a restrictive covenant to include other favored social units in addition to a traditional family. As early as 1883 our Supreme Court stated:

"Now this word 'family' contained in the statute, is an expression of great flexibility. It is applied in many ways. It may mean the husband and wife having no children and living alone together, or it may mean children, or wife and children, or blood relative, or any group constituting a distinct domestic or social body." *Carmichael v Northwestern Mutual Benefit Ass'n,* 51 Mich 494, 496; 16 NW 871 (1883). Quoted with approval in *Bellarmine Hills, supra.*

In cases similar to the one at bar where the proposed use of a facility is noncommercial, this Court has upheld the use of the property as an adult foster care small group home, despite similar deed restrictions. *Bellarmine, supra; Malcolm, supra; Leland Acres Homeowners Ass'n, Inc v R T Partnership,* 106 Mich App 790; 308 NW2d 648 (1981). We are in accord with this line of cases and, therefore, hold that the building and use

restrictions do not prohibit the applicant's proposed use of the premises as an adult foster care small group home.

Inasmuch as our holding rests upon a judicial interpretation of the covenant involved and not upon a finding that 1977 PA 28 vitiated these covenants, the constitutional prohibition against the impairment of contractual obligations is inapplicable. In any event, it is well settled that the police power of the state may be exercised to affect the impairment of contract clause. *Lahti v Fosterling,* 357 Mich 578; 99 NW2d 490 (1959).

## IX. ADDITIONAL STATUTORY VIOLATIONS

Plaintiffs argue that the defendant department committed a host of additional violations of law. First, plaintiffs note that, pursuant to MCL 400.713(3)(b); MSA 16.610(63)(3)(b), a license may issue only if the applicant is in compliance with acts and rules promulgated under the Adult Foster Care Facility Licensing Act. Plaintiffs assert that, inasmuch as the department has not promulgated any rules under the new leasing act and the prior rules were promulgated under the now repealed licensing act, 1972 PA 287, this provision has not been complied with. This assertion is without merit.

There are rules promulgated under the previous licensing act, 1972 PA 287. See, Vol II of the Michigan Administrative Code, 1979 AC, R 400.2101 *et seq.* Section 31(2) of the Administrative Procedure Act of 1969, MCL 24.231(2); MSA 3.560(131)(2), provides in part as follows:

"(2) When a law authorizing or directing an agency to promulgate rules is repealed and substantially the same rule-making power or duty is vested in the same or a

successor agency by a new provision of law or the function of the agency to which the rules are related is transferred to another agency, by law or executive order, the existing rules of the original agency relating thereto continue in effect until amended or rescinded, and the agency or successor agency may rescind any rule relating to the function."

` Pursuant to that provision, the rules promulgated under 1972 PA 287 are, by operation of statute, still in effect and, therefore, plaintiffs' claim is without merit.

Second, we are not persuaded by plaintiffs' contention that the defendant department's "indifference to the views of the City of Livonia and its residents", with respect to the foster care homes, constitutes a violation of MCL 400.709(2); MSA 16.610(59)(2). That statute states in part that "the department shall cooperate with other state departments and agencies and local units of government in administering this act". We are in accord with the observation of the hearing referee that the record reveals no evidence of the department's failure to cooperate with the city.

Plaintiffs' claim, that the application for licensure in this case is defective, was not raised below and, therefore, this issue is waived on appeal. *Brooks, supra.* In any event, we have reviewed this claim and found it to be without merit.

Next, plaintiffs claim that there are existing violations of local building, plumbing, electrical, heating, and fire code regulations and ordinances. Although it is not clear, plaintiffs' position seems to be that compliance with such codes is a prerequisite to valid licensure of an adult foster care home by the department but cites no authority or policy considerations in support of this position. By merely asserting a position, a party on appeal is

deemed to have abandoned his argument. *Brooks, supra.*

The final alleged statutory violation asserted by plaintiffs is that the licensure of the residence in question in violation of municpal zoning ordinances constitutes a nuisance per se. This argument is also without merit. As discussed above, the residents are exempt from local zoning ordinances and, therefore, there is no violation of such ordinances which can be used to sustain a claim of nuisance per se.

## X. SUMMARY JUDGMENT

Finally, plaintiffs contend that the trial court erred in granting defendants' motion for summary judgment pursuant to GCR 1963, 117.2(3).

GCR 1963, 117.2(3) allows the trial court to grant summary judgment where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Szidik v Podsiadlo,* 109 Mich App 446, 448-449; 311 NW2d 386 (1981). A motion based on subrule 117.2(3) is designed to test whether there is factual support for a claim. *Partrich v Muscat,* 84 Mich App 724, 730; 270 NW2d 506 (1978). Before a summary judgment may be granted, the court must consider the pleadings, affidavits, and other available evidence and be satisfied that the claim asserted cannot be supported by any evidence at trial. *Jacobs v DAIIE,* 107 Mich App 424, 432; 309 NW2d 627 (1981). The Supreme Court has held that a court may not grant summary judgment unless it finds that "it is impossible for the claim * * * to be supported at trial because of some deficiency which cannot be overcome". *Rizzo v Kretschmer,* 389 Mich 363, 372; 207 NW2d 316 (1973) (emphasis deleted); *Durant v Stahlin,* 375

Mich 628; 135 NW2d 392 (1965). The court must give the benefit of any reasonable doubt to the opposing party and inferences are to be drawn in favor of the one opposing the motion. *Littsey v Wayne State University,* 108 Mich App 406, 416; 310 NW2d 399 (1981).

Plaintiffs fail to allege any material issue of fact in this case. Moreover, there is no showing that the trial court did not give the benefit of every reasonable doubt in favor of the plaintiffs in ruling upon the motion. The trial court, therefore, did not err in granting defendants' motion for summary judgment.

In the case at bar, defendants presented affidavits to the trial court in support of its motion but plaintiffs presented no affidavits to counter defendants. The record fails to reveal the existence of any disputed material facts. Moreover, there is no showing that the trial court did not give plaintiffs the benefit of every reasonable doubt in ruling on defendants' motion. Therefore, we conclude that the trial court properly granted defendants' motion for summary judgment.

Affirmed. No costs, a public issue being involved.