THE DETROIT EDISON COMPANY v MICHIGAN AIR
POLLUTION CONTROL COMMISSION

Docket No. 98489. Submitted February 11, 1988, at Lansing. Decided
April 5, 1988.

Plaintiff, The Detroit Edison Company, received operating per-
mits from defendant, Michigan Air Pollution Control Commis-
sion, for coal-fired generators at one of its power plants. The
permits included certain administrative rules promulgated by
the defendant as conditions thereof. Plaintiff brought an action
in the Ingham Circuit Court challenging defendant's authority
to include promulgated rules as conditions of its operating
permits. Plaintiff also alleged violation of the Air Pollution Act
and its rights to due process and equal protection. The trial
court, Robert Holmes Bell, J., rejected plaintiff's claims. Plain-
tiff appealed.

The Court of Appeals *held:*

1. Defendant's practice of including promulgated rules as
permit conditions did not violate the Air Pollution Act. The
power to incorporate rules as permit conditions is necessarily
implied under the act.

2. Plaintiff's procedural and substantive due process rights
were not denied.

3. Plaintiff's claim of violation of its equal protection rights
was properly rejected as lacking supportive evidence.

Affirmed.

1. ENVIRONMENT — AIR POLLUTION ACT — OPERATING PERMITS —
    ADMINISTRATIVE LAW.

The Michigan Air Pollution Control Commission does not violate
the provisions of the Air Pollution Act by including certain

REFERENCES

Am Jur 2d, Administrative Law §§ 148, 233 *et seq.*, 434; Constitu-
tional Law § 804; Pollution Control §§ 6, 55-81.

Federal common law of nuisances as basis for relief in environmen-
tal pollution cases. 29 ALR Fed 137.

Pollution control: preliminary mandatory injunction to prevent,
correct, or reduce effects of polluting practices. 49 ALR3d 1239.

See also the annotations in the Index to Annotations under Admin-
istrative Law; Constitutional Law.

administrative rules formally promulgated and adopted by the commission as conditions of operating permits issued by the commission (MCL 336.11 *et seq.*; MSA 14.58[1] *et seq.*).

2. Administrative Law — Judicial Construction.

A court, in construing a statute, gives great weight to the interpretation given by an agency which is entrusted to enforce it where such is a long-standing interpretation.

3. Administrative Law — Judicial Construction — Administrative Interpretation.

Legislative silence in the face of an agency's construction of a statute is considered consent to the accuracy of that interpretation.

4. Environment — Pollution.

The right to pollute does not exist; therefore, a polluter has not been deprived of any protected property or liberty interest when the state halts the pollution.

5. Constitutional Law — Procedural Due Process.

One must demonstrate an interest within the contemplation of the "liberty or property" language of the Fourteenth Amendment before any procedural due process rights attach to an action; a person must have more than an abstract need, desire or unilateral expectation of a right; to constitute a protectable right, there must be a legitimate claim of entitlement to it (US Const, Am XIV).

6. Constitutional Law — Substantive Due Process — Administrative Law.

Substantive due process requires only that reasonably precise standards be utilized by administrative agencies in the performance of delegated legislative tasks; such standards must be as reasonably precise as the subject matter requires or permits.

*Solomon Bienenfeld, John H. Flynn* and *Susan M. Beale,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Stewart H. Freeman* and *Steven E. Chester,* Assistant Attorneys General, for defendant.

Before: R. M. MAHER, P.J., and SHEPHERD and K. TERTZAG,* JJ.

R. M. MAHER, P.J. Plaintiff appeals as of right from the decision of the Ingham Circuit Court that defendant did not violate the Air Pollution Act, MCL 336.11 *et seq.*; MSA 14.58(1) *et seq.*, or deny plaintiff the due process of law by including promulgated rules as conditions of its operating permits. The trial court also found that plaintiff had not presented sufficient evidence in support of its equal protection claim. We affirm.

Plaintiff is an investor-owned electric utility company which generates, distributes and sells electricity throughout southeast Michigan. Plaintiff owns and operates the Monroe Power Plant located in Monroe County. The Monroe Power Plant is the largest single source of sulfur and particulate emissions in the state, and is the largest generating plant within plaintiff's system. The installation permits for the four coal-fired generators at the plant were issued by defendant in 1968, 1970, 1976 and 1977. The generators began commercial operations between 1971 and 1974. Plaintiff applied for operating permits in 1975.

After a series of discussions with the Department of Natural Resources, Air Quality Division, plaintiff met with defendant on October 22, 1985, to finalize the operating permits. The DNR recommended that defendant approve the permits subject to certain conditions, such as the inclusion of administrative rules in the documents. Defendant had formally promulgated and adopted the rules in accordance with the Administrative Procedures Act, MCL 24.201 *et seq.*; MSA 3.560(101) *et seq.*, and the Air Pollution Act. As a matter of practice, defendant has included such rules as conditions of

* Circuit judge, sitting on the Court of Appeals by assignment.

its operating permits since 1972. Plaintiff objected to the practice, but defendant directed the DNR to continue discussions regarding the terms of the operating permits.

The ensuing discussions resolved only the existing technical disputes, though, as plaintiff would not agree to include any rules in the permits themselves. However, despite plaintiff's objections, each of the four operating permits included approximately nineteen rules, either expressly or by reference. Defendant approved the permits as written on December 3, 1985.

On December 23, 1985, plaintiff filed this action in the Ingham Circuit Court, challenging defendant's authority to include promulgated rules as conditions of its operating permits. More specifically, plaintiff challenged the effect of that practice. Plaintiff claimed that, pursuant to the Air Pollution Act, defendant may immediately institute legal proceedings against a permit violator but must first attempt to obtain a voluntary settlement with a rule violator. By including rules within a permit, defendant is thus able to take immediate legal action which would otherwise be delayed or unavailable if the rules were standing by themselves. This, plaintiff claimed, violated the Air Pollution Act and denied its rights to due process and equal protection.

Following a bench trial on the matter, the trial court issued an opinion and order on January 30, 1987, rejecting plaintiff's claims and upholding defendant's practice of including rules as conditions of operating permits. This appeal as of right followed.

I

Plaintiff first argues that the Air Pollution Act,

by treating rule violations differently than permit violations, implicitly prohibits defendant from including promulgated rules as conditions of operating permits. We disagree.

The stated purpose of the Air Pollution Act is "to control air pollution in this state; to create an air pollution control commission within the state health department; to prescribe its powers and duties; to prescribe the powers and duties of certain county agencies; to provide for the establishment of fees; and to provide penalties." Having the public's health and general welfare in mind, the Air Pollution Act is remedial in nature and, thus, entitled to liberal construction. *Soap & Detergent Ass'n v Natural Resources Comm,* 415 Mich 728, 740; 330 NW2d 346 (1982). This is especially true where—as here—the administrative agency charged with enforcing the act is granted broad and comprehensive powers. *Id.*

Under the Air Pollution Act, defendant has been given broad powers in matters involving the control of air pollution. These powers include, among other things, (1) making, modifying or canceling orders which require the control of air pollution, (2) instituting court proceedings to compel compliance with its rules, orders, or determinations, (3) encouraging voluntary cooperation by all persons in controlling air pollution and contamination, and (4) doing whatever else is necessary, proper or desirable to enforce the administrative rules pertaining to air pollution control. MCL 336.15; MSA 14.58(5).

Additionally, defendant is charged with the responsibility of promulgating rules pertaining to air pollution control. Section 7 of the act prescribes the procedure defendant must follow in promulgating those rules. MCL 336.17; MSA 14.58(7). First, the proposed rule must be approved by not less

than six of defendant's eleven members. Second, the proposed rule must pertain to one of several enumerated purposes. Finally, the rule must follow the general promulgation requirements of the APA, which includes obtaining approval from certain legislative units and the attorney general as well as conducting public hearings on the proposed rule. MCL 24.241, 24.245; MSA 3.560(141), 3.560(145).

Defendant is also authorized to issue operating permits to certain power plants using fuel-burning or refuse-burning equipment or an air-cleaning device. Before a permit can be issued, the power equipment must satisfy the following conditions: (1) it must operate in compliance with defendant's rules and the various state and federal laws concerning air pollution; (2) it cannot interfere with the attainment or maintenance of the air quality standard for any air contaminant; and (3) it must be completed in compliance with the installation permit and any conditions attached thereto. 1980 AACS, R 336.1208(3).

If defendant suspects that any person is "violating this act or any rule promulgated by [it] by causing or permitting air pollution," it shall conduct a prompt investigation. If a violation is found to exist, "it shall endeavor to enter into a voluntary agreement with such person" in order to abate the pollution. MCL 336.18(1); MSA 14.58(8)(1). If an agreement is reached, but the person thereafter violates its terms, defendant may seek judicial enforcement of whatever relief is deemed appropriate. MCL 336.18(3); MSA 14.58(8)(3). If the person feels aggrieved by the terms of the agreement, he or she may petition defendant for a hearing. A final decision by defendant on the dispute is conclusive, unless review is

sought in accordance with the APA. MCL 336.18(4); MSA 14.58(8)(4).

If a voluntary agreement cannot be reached within a reasonable time, defendant may, upon proper notice, issue a complaint and proposed order outlining the terms and time schedule for taking corrective action. Thereafter, if the person agrees to the proposed order, and does not request a hearing within thirty days, defendant may enter the order without further hearing. An order entered by defendant is considered final. MCL 336.19; MSA 14.58(9).

Section 16 of the Air Pollution Act prescribes the penalties for violations of its provisions:

> A person who or a governmental unit who fails to obtain or comply with a permit, or comply with a final order or order of determination of the commission made under this act is guilty of a misdemeanor and shall be fined not more than $10,000.00 and in the discretion of the court an additional amount of not more than $2,000.00 per day a violation continues. The circuit court of the county in which the violation occurred has exclusive jurisdiction. However, the person shall not be subject to the penalties of this section if the discharge of the emissions are in conformance with and obedient to a rule, voluntary agreement or order of the commission. Upon petition by the commission, the circuit court in the county where the violation exists may order a person to be restrained from continuing a violation. In addition the attorney general may, at the request of the commission, file an action in a court of competent jurisdiction to recover the full value of the injuries done to the natural resources of the state and the costs of surveillance and enforcement by the state resulting from the violation. In addition to any fine, the court in its discretion may impose probation upon any person for a violation of this section. [MCL 336.26; MSA 14.58(16).]

Moreover, defendant has the broad power to "bring any appropriate action in the name of the people of the state either at law or in chancery, as may be necessary to carry out the provisions of this act and to enforce any and all laws, rules and regulations relating to the provisions of this act." MCL 336.27; MSA 14.58(17).

As can be seen from the above discussion, the Air Pollution Act distinguishes between rule violations and permit violations. For rule violations, the act prescribes that defendant "shall endeavor to enter into a voluntary agreement" with the violator. On the other hand, if the violation pertains to the terms of an operating permit, defendant may take immediate judicial action against the violator; there is no requirement to first seek a voluntary agreement. Thus, the essence of the instant dispute is whether defendant should be able to include promulgated rules as permit conditions so that a violation of a rule necessarily violates a permit, foreclosing the need for preenforcement hearings or negotiations.

In resolving this issue, we are guided by the following rules of statutory construction:

> (1) [W]hen a statute is unambiguous, further construction is to be avoided; (2) if an ambiguity exists, the intent of the Legislature must be given effect; (3) a construction which best accomplishes the statute's purpose is favored; (4) statutes are to be interpreted as a whole and construed so as to give effect to each provision; (5) specific words in a statute are given their ordinary meaning unless a different interpretation is indicated; and (6) respectful consideration is to be given to the construction of a statute used by those charged with its application. [*Nicholas v Michigan State Employees Retirement Bd*, 144 Mich App 70, 74; 372 NW2d 685 (1985).]

Applying those rules to the instant case, we find that defendant's practice of including promulgated rules as permit conditions did not violate the Air Pollution Act.

It must first be conceded that, in the context of the instant dispute, the act is ambiguous since it does not explicitly condone or condemn the inclusion of rules as permit conditions. Being ambiguous then, we must determine the Legislature's intent in passing the act and give effect to such. On this point, we find the trial court's analysis to be sound, and therefore adopt it as our own:

> These provisions and the Act read as a whole evince a clear legislative intent to give the Commission broad authority to carry out its task of protecting the quality of Michigan's air. The Act does not expressly prohibit the incorporation of rules as permit conditions. Nor is there any reason in logic to believe the Legislature intended to do so. In fact, the practice makes eminently good sense. To adopt as permit conditions standards which have been evaluated and passed muster in the formal rule promulgation process is a practice designed to accommodate and protect the interests of all affected. As the Commission correctly points out, Edison's challenge to the propriety of the permit conditions would be considerably stronger if the conditions had *not* been first promulgated as rules. The rights of the public may not be determined, nor licenses denied, on the basis of unpromulgated policies. *Delta County v Department of Natural Resources,* 118 Mich App 458, 468; 325 NW2d 455 (1982). Considering the purposes for which the Commission was created and the broad authority conferred upon it, the Court believes the power to incorporate rules as permit conditions is necessarily implied under the Act.
>
> The Court acknowledges that the Act draws a clear distinction between rule violations and permit violations. This does not compel the conclu-

sion, however, that the Legislature intended to prohibit the incorporation of rules as permit conditions. Rather, the Commission's explanation of this distinction is far more persuasive. A person who violates a permit condition need not be given an opportunity to enter into a voluntary agreement or for an administrative hearing before judicial relief is sought, because he has, in effect, already been afforded similar safeguards in the permit application process.

To that analysis we would make three additional points: First, defendant has been including rules as permit conditions since 1972. Its interpretation of the act as allowing for such practice, being long standing, is entitled to great weight. *Hinton v Parole Bd,* 148 Mich App 235, 240; 383 NW2d 626 (1986). Second, subsequent to defendant's interpretation of the act, the Legislature enacted amendments thereto in 1972 and 1981. Legislative silence in the face of an agency's construction of a statute is considered consent to the accuracy of that interpretation. *Luttrell v Dep't of Corrections,* 421 Mich 93, 105; 365 NW2d 74 (1984). Because the Legislature did not expressly reject defendant's practice and clarify the apparent ambiguity, we must presume that it acquiesces in defendant's interpretation of the statute. Third, we reject plaintiff's argument that the language of the act, stating that defendant "shall endeavor to enter into a voluntary settlement," requires an attempt to reach a voluntary settlement whenever a rule is violated, regardless of whether that rule is contained in a permit. That argument merely begs, not resolves, the question in dispute. Since permit violations are exempt from the settlement requirement, and there is no express prohibition against including rules as permit conditions, we find plaintiff's argument unpersuasive.

II

Plaintiff next argues that defendant's practice of including rules as permit conditions violated its procedural and substantive due process guarantees. Again, we disagree.

Before any procedural due process rights attach to an action, one must demonstrate an interest within the contemplation of the "liberty or property" language of the Fourteenth Amendment to the United States Constitution. *Livonia v Dep't of Social Services,* 123 Mich App 1, 20-21; 333 NW2d 151 (1983), aff'd 423 Mich 466; 378 NW2d 402 (1985). To constitute a protectable right, a person must have more than an abstract need, desire or unilateral expectation of the right. Rather, there must be a legitimate claim of entitlement to it. *Edmond v Dep't of Corrections (On Remand),* 143 Mich App 527, 533; 373 NW2d 168 (1985) (citing *Bd of Regents of State Colleges v Roth,* 408 US 564; 92 S Ct 2701; 33 L Ed 2d 548 [1972]). It has been recognized that there exists no right to pollute. *Andrews v Jackson Co,* 43 Mich App 160, 164; 203 NW2d 925 (1972). Since no such right exists, a polluter has not been deprived of any protected property or liberty interest when the state halts the pollution.

Moreover, to the extent that a nonpolluting part of plaintiff's operation was affected, there was still no violation of procedural due process. Plaintiff was given notice and an opportunity to be heard throughout the permit application process. And, even if defendant institutes enforcement proceedings, plaintiff has an opportunity to voice its concerns and objections in a judicial forum. The gist of plaintiff's complaint seems to be that defendant's practice prevents it from renegotiating the terms of the permit via a rule violation hearing.

Plaintiff is deprived of nothing, except perhaps a second bite of the permit-negotiating apple.

For similar reasons, we reject plaintiff's substantive due process challenge. Substantive due process requires only that reasonably precise standards be utilized by administrative agencies in the performance of delegated legislative tasks. *State Highway Comm v Vanderkloot,* 392 Mich 159, 169-170; 220 NW2d 416 (1974); *Adkins v Dep't of Civil Service,* 140 Mich App 202, 213-214; 362 NW2d 919 (1985). The standards must be "as reasonably precise as the subject matter requires or permits." *Krohn v Bd of Medicine,* 98 Mich App 129, 133; 296 NW2d 57 (1980). One reason for this requirement is to prevent favoritism, discrimination and arbitrary decisions by administrative agencies. *Adkins, supra,* p 214. Another is to provide adequate protection to the interests of those affected. *Id.*

Here, the standards used by defendant are as reasonably precise as the task of air pollution control requires or allows. It would simply not be practical for the Legislature to provide specific regulations for the management of natural resources. *Dep't of Natural Resources v Seaman,* 396 Mich 299, 309; 240 NW2d 206 (1976). Furthermore, the enforcement alternatives available to defendant are not left to the agency's caprice. On the contrary, the Air Pollution Act is quite specific as to what actions may be taken against a rule violator as opposed to a permit violator. Finally, defendant's authority to decide which, if any, promulgated rules are to be included as permit conditions is not a legislative power but is, as the trial court stated, "a classic example of administrative power." By incorporating certain rules as permit conditions, defendant was not making the law but rather was exercising its discretion as to the exe-

cution of the law. See *King v Concordia Fire-Ins Co,* 140 Mich 258, 268-269; 103 NW 616 (1905); *Shelby Twp v Dep't of Social Services,* 143 Mich App 294, 298-299; 372 NW2d 533 (1985), lv den 424 Mich 859 (1985). For these reasons, we hold that plaintiff was not denied its right to substantive due process.

### III

Plaintiff argues lastly that the inclusion of promulgated rules as permit conditions violated its equal protection rights. As the trial court noted, plaintiff offered no proof on this issue at trial beyond the bald allegations of error. Accordingly, the claim was properly rejected as lacking supportive evidence.

The opinion and order of the trial court are affirmed.