**PAW PAW WINE DISTRIBUTORS, INC., et al., Plaintiffs,**

v.

**JOSEPH E. SEAGRAM & SONS, INC., et al., Defendants.**

No. G84–911 CA.

United States District Court,
W.D. Michigan,
Southern Division.

Dec. 8, 1987.

Order Denying Reconsideration,
Jan. 15, 1988.

Willingham, Cote' Hanslovsky, Griffith & Foresman, by Ray Foresman, East Lansing, MI, Fred Baker, Lansing, MI, for plaintiffs.

Dykema, Gossett, Spencer, Goodnow & Trigg, by Stephen D. Turner, James R. Piggush, Grand Rapids, MI, for defendants Seagrams & Distillers.

## OPINION

GIBSON, District Judge.

Plaintiffs, Paw Paw Wine Distributors, Inc. ("Paw Paw") and Dixon Distributing Co. ("Dixon"), filed this action in state court against defendants Joseph E. Seagram & Sons, Inc., The Seagram Wine Company ("Seagram" collectively), and O'Donnell Importing Company ("O'Donnell"), alleging breach of contract, violation of the Wine Franchise Act, M.C.L.A. § 436.30 ("Wine Act"), unreasonable termination without notice, and unjust enrichment, as the result of

the termination of plaintiffs' wholesale wine distributorship rights. The matter was removed to this forum under 28 U.S.C. § 1441(c). Subsequently, on June 9, 1986, defendant O'Donnell was dismissed pursuant to stipulation of the parties. Now before the Court is plaintiffs' motion for partial summary judgment as to liability on all claims except unjust enrichment. Also before the Court is defendant Seagram's cross-motion for summary judgment.

The distributorship relationships involve three categories of wines, "Paul Masson," "The Wine Spectrum," and "Fine Imported Wines," each of which is subject to different types of arrangements. Paul Masson wines were the subject of an oral agreement between plaintiff Paw Paw and defendant Seagram. Under this arrangement, Paw Paw's orders were filled on an order-by-order basis. The Wine Spectrum agreements were written contracts, of one year duration, between The Wine Spectrum and both plaintiffs Paw Paw and Dixon. Seagram succeeded to these agreements, which were scheduled to expire on February 29, 1984, by virtue of its acquisition of the Wine Spectrum brands in the latter part of 1983. Fine Imported Wines were the subject of an oral arrangement between plaintiff Paw Paw and defendant O'Donnell, Seagram's alleged agent and master distributor of Fine Imported Wines. On February 1, 1984, Seagram's president, Richard Maher, notified plaintiffs that their Wine Spectrum contract "expires the 29th of February, 1984," but that pending review of its distribution arrangements in Michigan, effective March 1, 1984 Seagram would continue to make sales of the Wine Spectrum brands to plaintiffs on a month-to-month basis. On June 21, 1984, Seagram notified plaintiffs by mailgram that their distributorship rights for both Paul Masson and The Wine Spectrum brands were immediately terminated. With respect to Fine Imported Wines, although the nature of the relationship among the parties is contested, it is undisputed that sales of these brands by O'Donnell to Paw Paw ceased as of July 3, 1984.

Generally, plaintiffs contend that they are entitled to summary judgment because the

Paul Masson and Wine Spectrum contracts were subject to reasonable notice requirements which were not satisfied by the June 21, 1984 mailgram. As a result, the plaintiffs contend that the agreements were in force on the effective date of the Wine Act and thus subject to its terms, which among other things, limits termination of distributorships for cause only and with reasonable notice. Similarly, with respect to Fine Imported Wines, plaintiff Paw Paw contends that Seagram, through its alleged master distributor O'Donnell, terminated the agreement without notice after the effective date of the Wine Act and thus in violation of its terms.

The defendants counter that they are entitled to summary judgment based on the contention that its notice of termination regarding the Paul Masson and Wine Spectrum agreements was sufficient and thus the agreements were not in force on the effective date of the Wine Act and were not subject to its provisions. Furthermore, Seagram disputes any agency relationship between it and O'Donnell and it contends that the lack of contractual privity with Paw Paw bars any right to relief on the claims involving the Fine Imported Wines. Moreover, Seagram challenges the constitutionality of any retroactive application of the Wine Act.

To warrant the grant of summary judgment, the moving party bears the burden of establishing the non-existence of any genuine issue of fact that is material to a judgment in his favor. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 147, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *United States v. Articles of Device Consisting of Three Devices ... "Diapulse"*, 527 F.2d 1008, 1011 (6th Cir.1976). In determining whether or not there are issues of fact requiring a trial, "the inferences to be drawn from the underlying facts contained in the affidavits, attached exhibits, and depositions must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425 (6th Cir.1962). Even if the basic facts are not disputed, summary judgment may be inappropriate when contradictory inferences may be drawn

from them. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *E.E.O.C. v. United Association of Journeymen & Apprentices of Plumbing & Pipefitting Industry of U.S. and Canada, Local 189*, 427 F.2d 1091, 1093 (6th Cir.1970).

## DISCUSSION

### I. THE PAUL MASSON AGREEMENT

Defendant Seagram contends that it never entered into a continuing distributorship agreement with Paw Paw for Paul Masson wines. Instead, Seagram contends that the relationship between the parties was that of buyer and seller whereby orders were filled on a monthly order-by-order basis, each such transaction constituting a separate agreement, which was terminable-at-will without notice. Seagram further contends that even if it had an oral distributorship arrangement with Paw Paw, the agreement lacked durational terms and was thus terminable-at-will without notice. Paw Paw asserts that a continuing distribution relationship existed and further contends that the agreements, even if terminable-at-will by either party, were subject to reasonable notice requirements. Paw Paw contends that reasonable notice is mandated by the common law and the Uniform Commercial Code ("UCC"). Additionally, Paw Paw argues that the obligation of reasonable notice arose from the contractual duties imposed upon Paw Paw in exchange for the continued right to distribute Paul Masson wines.

A review of the affidavits and other exhibits submitted with these motions leads the Court to conclude that the parties were indeed engaged in a continuing direct distributorship relationship, albeit of unspecified duration. Exhibit C attached to Seagram's brief dated May 5, 1987 is a copy of a document entitled "Request for Distributor Change." This document, dated December 1, 1980, reflects the discontinuance of O'Donnell and the addition of Paw Paw as master distributor of Paul Masson wines. The reasons cited for the change is that the "market is ready for a direct distributor who will pay the necessary attention to Paul Masson." Thus the defendant's own documentation refutes its contention that there was only a

buyer-seller relationship between the parties. Evidence of the long-standing nature of the distributorship relationship is set forth in the affidavit of Raymond Schincariol, President of Paw Paw. Mr. Schincariol states that the relationship was in existence for over twenty years, and documents dated as far back as 1969 and addressed to "Paul Masson distributors," including Paw Paw, lends further support to Mr. Schincariol's statement. It is undisputed that the agreement had no terms, but was maintained in accordance with the practice of the parties and the custom of the industry.

 Having found a continuing distributorship relationship of unspecified duration, the Court must next consider the circumstances under which such a relationship may be terminated. Seagram cites *Dunn v. Goebel Brewing Co.*, 357 Mich. 693, 99 N.W.2d 380 (1959) for the proposition that no advance notice is required to terminate a long-standing distributorship agreement which lacks terms of duration. Paw Paw urges that the *Dunn* decision has been legislatively overruled by the enactment of the reasonable notice requirements of the UCC. Further, Paw Paw asserts that even if the UCC is inapplicable, the decision in *Lorenz Supply Co. v. American Standard, Inc.*, 419 Mich. 610, 358 N.W.2d 845 (1984), mandates that an oral distributorship cannot be terminated without reasonable notice where, as alleged in this case, the distributor has invested substantial amounts in inventory. Moreover, Paw Paw argues that it had a reasonable expectation of continued distributorship so long as it met the sales quotas and other duties established by Seagram and thus its contract required reasonable notice for termination. A review of the evidence presented and the relevant case law leads the Court to conclude that, under the facts and circumstances of this case, reasonable notice was required for termination under either common law or the UCC even if the distributorship was terminable-at-will. Reasonable notice would also be required if plaintiff had invested substantial sums in reliance on a continued relationship with Seagram so as to mandate being given the opportunity to recoup that investment. However, there are disputed issues of fact which preclude granting judgment on this issue. The Court cannot say as a matter of law that the relationship which existed between Paw Paw and Seagram was such that the lack of notice prior to termination constituted actionable conduct.

## II. *THE WINE SPECTRUM AGREEMENTS*

The most recent written distribution agreements between Seagram's predecessor, The Wine Spectrum, and the plaintiffs Paw Paw and Dixon were for a term of one year and expired on February 29, 1984. On February 1, 1984, the plaintiffs were informed that the one-year agreements would not be renewed, but that all sales would be on a month-to-month basis. Plaintiffs rely on three theories to support their argument that the contractual relationship existed with Seagram on June 26, despite their receipt on June 21 of notices purporting to terminate that relationship.

First, the plaintiffs contend that the notice and cause provisions of the one year contracts were incorporated into the month-to-month contracts. Although there is no dispute that the one year contract expired on February 29, 1984, the plaintiffs claim that the subsequent conduct of the parties gave rise to a new contract containing the notice and cause requirements of the previous contract. Seagram's position is that upon the expiration of a prescribed period (February 9), the agreement ceases to exist, and its terms have no force and effect. The Court has reviewed the cases cited by the parties, none of which provide a conclusive answer to this issue.

 In determining contractual rights and obligations, the Court must look to the intention of the parties and the contract should be construed so as to carry that intention into effect. *Central Jersey Dodge Truck Ctr. v. Sightseer Corp.*, 608 F.2d 1106 (6th Cir.1979). If, however, a contract term is ambiguous or rendered indefinite or uncertain when applied to the facts of a particular situation, then additional evidence should be considered to determine what the parties intended. *Henry v. J.B. Publishing Co.*, 54

Mich.App. 409, 413, 221 N.W.2d 174, 175 (1974).

The Court notes that the previous contracts between plaintiffs Paw Paw and Dixon and Seagram's predecessor, The Wine Spectrum, set forth specific provisions governing the terms of the agreement, geographic territory, products, payment, inventory level, promotion of Wine Spectrum products, and procedures for termination. The agreements expired by their terms on February 29, 1984. There is no dispute on that issue. The question raised is whether the February 1, 1984 mailgram created a distribution contract and/or reinstituted the termination procedures. The Court is of the opinion that the resolution of this issue depends upon a fuller development of the factual record. Therefore, the Court cannot find as a matter of contract interpretation that contract rights were intended and that the termination procedure clause of the year long contract were incorporated into that contract. It is sufficient for present purposes to say that the Court will not deem the contract extended past June 26, 1984 on this theory.

The plaintiffs' second theory is that "reasonable notice" is required before termination of a distributorship is effective. The defendant's response is that the present contracts provide for indefinite distributorship relationships and as a result, the contracts are terminable-at-will. Both parties rely on *Lichnovsky v. Ziebart*, 414 Mich. 228, 324 N.W.2d 732. In *Lichnovsky*, a licensee sought an injunction to restrain Ziebart from terminating the franchise agreement to sell and install rustproofing in automobiles. The licensing agreement did not set forth a definite term, but provided that the agreement would remain "in full force and effect, unless terminated at an earlier date." It also required cause for termination. The court rejected the contention that the contract was for an indefinite duration. The court found that contracts of indefinite terms are ones which do not specify the term, duration or manner of termination. The court noted that such contracts are terminable-at-will. The theory underlying the "at-will" nature of such contracts is that not having agreed to a term, it is inferred that the parties intended

to be discharged at their will. *Lichnovsky*, 414 Mich. at 242, 324 N.W.2d at 739. The court concluded that the parties removed any element of indefiniteness by having agreed upon the method of termination. Although, finding that the agreement did not contain a definitely fixed term, the Court concluded that it was not terminable-at-will.

■ If contracts existed in the present case, they were not terminable-at-will under the *Lichnovsky* analysis. In the February 1, 1984 mailgram, Seagram specifically indicated that "all of our sales of the former Wine Spectrum brands to you will be on a month to month basis." Like the contract in *Lichnovsky*, no outside time parameter was established by the parties. However, specification of the month-to-month nature creates the inference that the parties did not intend to create "at-will" contracts. The parties clearly intended the contractual relationship to resume for at least one month. It is not so clear when they intended that relationship to be terminated. Having supplied some term of duration, this Court concludes the contracts between plaintiffs and Seagram were not terminable-at-will.

■ The question remains when is termination proper under the relationship created by Seagram's February mailgram. The plaintiffs suggest two alternatives. The first is that the Court apply the "reasonable notice" requirement of the Uniform Commercial Code which is to imposed in the absence of a specific time provision. M.C.L.A. § 440.2309. The plaintiffs also suggest that the Court borrow the 30–day notice rule applied in housing lease cases.

The Court is of the opinion that it is inappropriate to apply an arbitrary time period. Rather, the party exercising its power of termination should do so in a reasonable time. What constitutes a reasonable time depends upon the facts and circumstances, but particularly hinges on the time necessary to enable the plaintiffs to look for a new source of supply. *Aaron E. Levine and Co. v. Calkraft Paper Co.*, 429 F.Supp. 1039, 1050 (E.D.Mich.1976). Relying upon U.C.C. § 2–209 (M.C.L.A. § 440.2309), The Court in *Aaron E. Levine* required reasonable notice prior to defendant's termination of an oral dis-

tributorship agreement. However, the Court found the nine months' notice supplied by the defendant was reasonable. *Cf. Busam Motor Sales v. Ford Motor Co.*, 203 F.2d 469, 472 (6th Cir.1953) (power to terminate at-will distributorship contract must be exercised in good faith); *J.R. Watkins Co. v. Rich*, 254 Mich. 82, 235 N.W. 845 (1931) (termination of commercial contract not involving fancy, taste, judgment, or other "personal features" must be exercised only in good faith). These cases reflect a movement in Michigan and other jurisdictions to protect distributors against sudden termination. The plaintiffs are entitled to such time as is necessary to minimize their losses by making other arrangements. *See* 6 Corbin on Contracts, § 1266. Thus, under either theory espoused by plaintiffs, the immediate terminations by Seagram were insufficient as a matter of law and plaintiffs are entitled to summary judgment on that issue.

III. *THE FINE IMPORTED WINES AGREEMENT*

"Fine Imported Wines" refers to various wine products imported and marketed in the United States by Seagram. In Michigan, Seagram sold their imported wines through O'Donnell. O'Donnell had the right to distribute the imported wines throughout the State of Michigan and to enter into distributorship agreements with third parties. Paw Paw had such a distributorship agreement with O'Donnell and purchased all or a substantial portion of its Fine Imported Wines through O'Donnell. It is admitted that O'Donnell continued to sell the wines to Paw Paw after June 26, 1984, the effective date of the Wine Act. O'Donnell also "admitted" that Seagram instructed him to stop selling the wines to wholesalers located outside of the metropolitan Detroit area on July 2, 1984. From that date forward, O'Donnell refused to honor orders from Paw Paw for fine imported wines. It is also undisputed that the February 1, 1984 letter does not purport to cover whatever distribution rights existed with respect to the Fine Imported Wines. Nor does the telegram of June 21, 1984 make any reference to the termination of distribution of Fine Imported Wines. Thus, the Court finds that prior to July 2, 1984, what-

ever distribution agreement existed between O'Donnell and Paw Paw remained in effect and accordingly is subject to the provisions of the Wine Act, assuming it applies to agreements in existence prior to the Act's effective date.

■ It is undisputed that Paw Paw had no express contractual relationship with Seagram with respect to the Fine Imported Wines. However, plaintiff contends that Seagram is liable for the termination on an agency theory. Seagram denies the existence of such a relationship. Whether the relationship between the two companies was one of agency is a fact question. *Caldwell v. Cleveland–Cliffs Iron Co.*, 111 Mich.App. 721, 315 N.W.2d 186 (1981). The party asserting agency has the burden of proof. *Id.* Other than the admission that Seagram instructed O'Donnell to limit its sales to the eastern half of the state, there is no evidence presented that the relationship between Seagram and O'Donnell was anything other than a supplier—master-distributor relationship or that of independent contractor. The evidence presented is insufficient to support the inference of an agency relationship between Seagram and O'Donnell. As a result, the Court finds as a matter of law that plaintiff may not recover contract damages from Seagram on an agency theory.

■ The Court further finds that in the absence of a contractual relationship, Seagram may not be held liable for damages for alleged violations of the Wine Act. Section 436.30c(28) of the Wine Act provides in pertinent part: "If a supplier engages in conduct prohibited under this section, a wholesaler with which the supplier has an agreement may maintain a civil action against the supplier to recover damages reasonably incurred as a result of the prohibited conduct." An "agreement" is defined in the Act as "any agreement between a wholesaler and a supplier, whether oral or written, whereby a wholesaler is granted the right to offer and sell a brand or brands of wine sold by a supplier." M.C.L.A. § 436.30b(2)(a). There is no indication, explicit or implicit, that the legislature intended to confer substantive rights upon non-contracting parties. Thus,

absent the existence of a contractual relationship between the parties, Paw Paw may not recover from Seagram for O'Donnell's termination of its distribution contract. whatever rights inured to Paw Paw under the Act were limited to a civil action against O'Donnell, the party with whom Paw Paw had a contractual relationship. Accordingly, Seagram is entitled to summary judgment on that claim.

## IV. APPLICABILITY OF THE WINE ACT

■ The Wine Franchise Act, M.C.L.A. § 436.30, was enacted on June 26, 1984 and was ordered to take immediate effect. See M.C.L.A. § 436.30d. The plaintiffs contend that since termination was ineffective, the obligations continued after the enactment of the Wine Act. This Court has concluded that reasonable notice was required to effectively terminate the distribution agreements. Seagram's June 21, 1984 mailgram stated "effective today your distribution rights in the State of Michigan for the brands listed below are hereby withdrawn." There was no notice of termination, only the termination itself.

If a party who has a power of termination by notice fails to give the notice in the form and at the time required by his reservation, it is ineffective as a termination. 6 Corbin on Contracts, § 1266. Therefore, on the record now before this Court, it appears that the obligation under the contract continued subsequent to June 21, 1984.

The plaintiffs rely on Anderson's Vehicle Sales, Inc. v. OMC Lincoln, 93 Mich.App. 404, 287 N.W.2d 247 (1979) for the proposition that application of the Wine Act to a contract in existence prior to its enactment does not unconstitutionally impair defendant's vested contract rights. Anderson's Vehicle Sales involved a dealer-agreement statute, M.C.L.A. § 445.522 (repealed and recodified at § 445.1567), which became effective on July 11, 1978. The franchisee was entitled to thirty days' notice under its franchise agreement, and was given notice of termination on July 5. The Court of Appeals held that since termination could not occur until August 5 and the law became effective on July 11, the franchisee was entitled to the protections conferred by the new legislation.

The court in Anderson's Vehicle Sales rejected the very argument advanced by the defendants in this case. Seagram contends that the Wine Franchise Act should not be applied retroactively to contracts entered before June 26, 1984. The court in Anderson's Vehicle Sales noted the language of the statute at issue required that it apply to agreements already in effect and that the statute take immediate effect. The court concluded that even though the notice of termination, pursuant to a pre-existent contract was given prior to the enactment of the Act, the retroactive application of the statute was not an issue because the termination itself was to occur subsequent to the effective date of the statute and hence it was applicable thereto. The court also noted the remedial purposes of the Act. 93 Mich.App. at 410, 287 N.W.2d 247.

In contrast, defendant relies on the Sixth Circuit Court of Appeals' opinion in Dale Baker Oldsmobile v. Fiat Motors for the proposition that the provisions of the Wine Act should not be applied retroactively. 794 F.2d 213 (6th Cir.1986). In Dale Baker, an automobile dealer also sought compensation from a distributor who had terminated agreements between them. The issue before the court was whether the section of the Michigan Motor Vehicle Act requiring payment by manufacturer or distributor for wrongful termination would be construed to require retroactive application of the statute to contracts in existence prior to the effective date of the Act. The Court of Appeals construed the statute to have prospective application only. 794 F.2d at 221. The Court of Appeals did not reach the issue of impairment of contracts but voiced reservations concerning the constitutionality of retroactive application under the facts presented. Id.

■ While both Dale Baker and Anderson's Vehicle Sales are instructive, the Court finds neither dispositive on the issues presented here. Unlike the ambiguous statute at issue in those cases, the application of the Wine Act to the contracts at issue here is mandated by the clear wording of the statute. Statutes are construed so as to have prospective effect, unless the legislature ex-

pressly or impliedly indicates its intention to give it retrospective effect. *Hughes v. Judges' Retirement Board*, 407 Mich. 75, 282 N.W.2d 160 (1979). In this case, the legislature expressly provided that the Wine Franchise Act "shall apply to agreements in existence on the effective date of this section, as well as to agreements entered into or renewed after the effective date of this section." M.C.L.A. § 436.30c(27). This wording is unambiguous and provides the best indication of legislative intent. It is unreasonable to presume the legislature intended that there be two classes of agreements in existence, those which have the advantage of the Act and those which do not. Rather, the Act's stated purpose, "to maintain stability and healthy competition in the wine industry in this state," strongly implies a legislative intent that the Act apply to all wine franchise agreements in effect on June 26, 1984 and thereafter. Accordingly, the Court concludes that the Act applies to the agreements between the plaintiffs and Seagram.

## V. *IMPAIRMENT OF CONTRACTS CHALLENGE*

Prior to the amendment of Section 436.30 of the Liquor Control Act, that section only required that manufacturers and outstate distributors grant exclusive territories to Michigan distributors. It appears from the stated purposes of the Wine Act that the amendments to the Act were intended to provide stability for the wine market and bolster the three-tier distribution system. The Act seeks to accomplish this by conferring substantive rights upon distributors, primarily the right to be free from supplier coercion. M.C.L.A. § 436.30c(3). It also prohibits suppliers from terminating or failing to renew distributorships absent good faith and good cause. M.C.L.A. § 436.30c(7). The Act further requires the supplier to provide notice of deficient conduct and a reasonable opportunity to comply with the agreement. M.C.L.A. § 436.30c(8)(d),(e). Finally the suppliers must give at least fifteen days' notice of termination and state the reasons for their action. M.C.L.A. § 436.30c(10).

■ Seagram challenges the "retroactive" application of the Wine Act, M.C.L.A.

§ 436.30c, as unconstitutional. It is Seagram's contention that application of the Act to contracts in existence prior to its enactment violates the Contracts Clause of the United States Constitution, Art. 1, Section 10, Clause 1, which provides in pertinent part that "[n]o State shall ... pass any ... Law impairing the Obligation of Contracts...." While this prohibition appears absolute, it has long been held that the language of the Clause does not act as a complete bar to legislative alterations of existing contractual obligations. "Its prohibition must be accommodated to the inherent police power of the State to 'safeguard the vital interests of the people.'" *Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 410, 103 S.Ct. 697, 74 L.Ed.2d 569 (1983), quoting *Home Building & Loan Association v. Blaisdell*, 290 U.S. 398, 434, 54 S.Ct. 231, 78 L.Ed. 413.

■ Defendant also raises a similar challenge under Michigan law. The Michigan Constitution contains an analogous prohibition against impairment of contracts. Mich. Const. Art. 1, § 10, cl. 1. In construing the Michigan Contracts Clause, the Michigan courts have adopted the balancing approach utilized by the United States Supreme Court in *Energy Reserves Group, Inc. v. Kansas Power & Light*, 459 U.S. 400, 103 S.Ct. 697, 74 L.Ed.2d 569; *Blue Cross and Blue Shield of Michigan v. Milliken*, 422 Mich. 1, 367 N.W.2d 1 (Mich.1985). Thus, under either Michigan or federal law, the analysis is the same.

■ Parties seeking relief under the Contract Clause must demonstrate 1) that there has been a substantial impairment of a contractual relationship; 2) that the impairment is not justified by a "significant and legitimate public purpose;" or if so justified, then 3) that the impairment is not based upon reasonable conditions or that the impairment is not of a character appropriate to the public purpose justifying adoption of the legislation. *Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 412–13, 103 S.Ct. 697, 74 L.Ed.2d 569; *Blue Cross and Blue Shield of Michigan v. Milliken*, 422 Mich. 1, 367 N.W.2d 1, 13–14.

■■ The threshold determination is whether the Wine Franchise Act has substantially impaired Seagram's contractual rights. Significant to this issue is the fact that the parties are operating in a heavily regulated industry. *Energy Reserves,* 459 U.S. at 414, 103 S.Ct. 697; *Blue Cross v. Milliken,* 367 N.W.2d at 14. State authority to regulate liquor sales is well established. Specifically, the Twenty–First Amendment confers upon the states broad powers to regulate the sale of alcoholic beverages. U.S.C.A. Const. Art. 1, § 8, cl. 3; Amend. 21. "The Twenty–First Amendment grants the States virtually complete control over whether to permit importation or sale of liquor and how to structure the liquor distribution system." *California Retail Liquor Dealers v. Midcal Aluminum, Inc.,* 445 U.S. 97, 110, 100 S.Ct. 937, 63 L.Ed.2d 233 (1980); *Castlewood International Corp. v. Simon,* 596 F.2d 638 (5th Cir.1979), *vacated and remanded on other grounds,* 446 U.S. 949, 100 S.Ct. 2914, 64 L.Ed.2d 806 (1980), *panel opinion reinstated,* 626 F.2d 1200 (1980). In *Castlewood,* the Fifth Circuit Court of Appeals noted:

> [A]ny analysis of the validity of a state statute regulating liquor does not proceed via the traditional route for testing the constitutionality of its statutes. We proceed from a vantage point of a presumed state power and then ask whether there are any limitations to that power, always keeping in mind that where intoxicating liquors are concerned, great deference must be accorded a comprehensive state regulatory scheme.

596 F.2d 638, 642. As a result, regulations in the context of liquor distribution enjoy a strong presumption of validity. *California v. LaRue,* 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972). Likewise, under Michigan law, the Liquor Control Commission, in conjunction with the legislature, has been granted broad powers to control the sale, use, transportation and consumption of intoxicating liquors. Mich. Const. Art. 4, § 40. *Fitzpatrick v. Liquor Control Commission,* 316 Mich. 83, 25 N.W.2d 118, 120 (Mich. 1946).

■■ Analyzing the statutory scheme in light of these standards, the Court finds that the provision of the Wine Franchise Act relating to termination of distributorships is constitutional. In light of the pervasive regulation in this area, any impairment of contractual rights which may have occurred does not approach the level of a "substantial impairment." Due to the nature of the business in which the parties were engaged, Seagram could not have reasonably expected that the law in this area would remain static. When one chooses to engage in an enterprise which is heavily regulated, one may not reasonably complain when further regulation in the field occurs if such regulation is reasonable and rationally related to a legitimate legislative purpose. The Wine Act and other statutes regulating the sale and distribution of liquor were in effect at the time the present contracts were signed. Likewise, other Michigan franchise regulations were in effect, including the Automobile Dealers Franchise Act, which limited termination of dealerships. *See* M.C.L.A. § 445.1567(1). Thus it was foreseeable that such legislation might be enacted. In addition, the Act's restrictions are appropriate in light of the legislation's remedial goals. The Act does not totally deny Seagram the power to terminate distributorships; it merely places restrictions on the timing, manner and rationale for such terminations. Based on these facts, the Court concludes that no substantial impairment has occurred.

In any event, the Court finds that the statute as enacted is a legitimate method of regulating the liquor distribution system. The provisions are rationally related to the legislation's remedial goals: "To control and stabilize the distribution of alcoholic beverages to the public and to maintain stability and healthy competition in the wine industry in the state." The Wine Act does not attempt to regulate contracts which were properly terminated before its effective date. The fact that the legislation applies to contracts existing prior to the Act's effective date but terminated subsequent to that date does not alter the Court's conclusion that the Act is constitutional. The Wine Act is a valid exercise of the State's legitimate power to control the sale and distribution of liquor in the state. There is a significant and legitimate public purpose behind the regulation and the

legislation adopted is reasonably related to that public purpose. Thus, Seagram is properly subject to the Wine Act's terms and limitations with respect to contracts in existence on the Act's effective date.

### VI. TITLE—OBJECT CLAUSE CHALLENGE

 Article 4, Section 24 of the Michigan Constitution provides:

> No law shall embrace more than one object, which shall be expressed in its title. No bill shall be altered or amended on its passage through either house so as to change its original purpose as determined by its total content and not alone by its title.

This provision embraces two concepts: 1) that the law shall not embrace more than one object and 2) that the object which the law embraces shall be expressed in its title. *City of Livonia v. Department of Social Services,* 123 Mich.App. 1, 333 N.W.2d 151, 156 (Mich. App.1983). The clause is only violated where "subjects diverse in their nature and having no necessary connection are included in an act." *Id.* at 157, citing *In re Advisory Opinion (Being 1975 Pa. 227),* 396 Mich. 123, 240 N.W.2d 193 (1976). The constitutional requirement that the object be expressed in the title is met if the act centers on one main general object or purpose which the title comprehensively declares, though in general terms, and if provisions in the body of the act, although not directly mentioned in the title, are germane, auxiliary or incidental to that purpose. *City of Livonia,* at 157. Plaintiff challenges the amendments of the Liquor Control Act, M.C.L.A. § 436.1 *et seq.,* to include the Wine Franchise Act, as violative of this provision. A review of the title of the Act, in light of the general object or purposes reflected by the provisions encompassed therein, leads the Court to conclude that the Act is not violative of the Title—Object Clause of the Michigan constitution. While regulation of the manner of termination of liquor distributorships is not specifically mentioned in the title, such regulation is clearly germane to the stated purposes of the Liquor Control Act which are the control of sale, use, transportation and consumption of intoxicating liquor. *See Gray v. Blackman,* 30 Mich.App. 212, 186 N.W.2d 76 (1971). Seagram's motion for summary judgment on that basis is denied.

### CONCLUSION

For the reasons stated above, the Court finds that the cross-motions for summary judgment pending in this case are GRANTED IN PART AND DENIED IN PART. The Court finds that the Wine Act is constitutional under both the United States and Michigan Constitutions. The Court also finds that Plaintiffs Paw Paw and Dixon's motion for summary judgment must be GRANTED on the issue of liability with respect to the Paul Masson and Wine Spectrum agreements and DENIED as to the Fine Imported Wines agreement. The Court further finds that Defendant Seagram's motion for summary judgment must be GRANTED with respect to the Fine Imported Wines agreement and DENIED as to the Paul Masson and Wine Spectrum agreements.

### MEMORANDUM OPINION AND ORDER

This matter comes before the Court on defendants Joseph E. Seagram & Sons, Inc. and The Seagram Wine Company's ("Seagram" collectively) motion to clarify or reconsider the Opinion and Order of this Court dated December 8, 1987. In the alternative, the defendants have petitioned the Court to amend its Order to include language which would allow Seagram to pursue an interlocutory appeal with the Sixth Circuit Court of Appeals. Seagram has requested oral argument on this matter. The Court notes that oral argument on the initial motions was held on April 15, 1987. After careful review, the Court finds that oral argument will not materially advance resolution of this matter and is unnecessary for disposition of this matter. Accordingly, Seagram's request for oral argument is denied. A review of the briefs submitted as well as a review of the December 8, 1987, Opinion and the evidence relevant thereto, the Court finds that certain portions of the Opinion of the Court are indeed contradictory or incorrect and that clarification is warranted.

With respect to the Paul Masson agreement, the Court notes that the Court's Opinion does in fact contain language which, at first blush, is contradictory. Specifically, the portion of the Opinion dealing with reasonable notice prior to termination of the Paul Masson agreement reads as follows:

A review of the evidence presented and the relevant case law leads the Court to conclude that, under the facts and circumstances of this case, reasonable notice was required for termination under either common law or the UCC even if the distributorship was terminable-at-will. Reasonable notice would also be required if plaintiff had invested substantial sums in reliance on a continued relationship with Seagram so as to mandate being given the opportunity to recoup that investment. However, there are disputed issues of fact which preclude granting judgment on this issue. The Court cannot say as a matter of law that the relationship which existed between Paw Paw and Seagram was such that the lack of notice prior to termination constituted actionable conduct.

*Paw Paw Wine Distributors, Inc. v. Joseph E. Seagram & Sons, Inc.,* 1987 WL 486961, No. G84–911, p. 7 (W.D.Mich. Dec. 8, 1987). Clearly, the last two sentences cited above appear to be in direct conflict with the preceding sentences. However, this finding was only directed to the alternative basis for a decision in Paw Paw's favor. A review of the arguments presented and the evidence relevant thereto leads the Court to again conclude that Paw Paw is entitled to summary judgment with respect to the Paul Masson agreement. It is undisputed that Seagram terminated the Paul Masson agreement pursuant to the June 21, 1984 mailgram without providing any notice whatsoever. Under either the common law or under the Uniform Commercial Code, reasonable notice was required for termination of the distributorship agreement. The Opinion and Order of the Court granting summary judgment in Paw Paw's favor with respect to the Paul Masson agreement is REAFFIRMED.

With respect to Seagram's arguments for reconsideration of that portion of the Court's December 8, 1987 Opinion which addresses the constitutionality of the Wine Franchise Act, the Court notes that page 21, paragraph 1, sentence 4 contains a clerical error. The sentence reads as follows: "The Wine Act and other statutes regulating the sale and distribution of liquor were in effect at the time the present contracts were signed." The correct construction of this sentence should read as follows: "The Liquor Control Act and other regulations pertaining to the sale and distribution of liquor were in effect at the time the present contracts were signed." Accordingly, the December 8, 1987 Opinion is hereby AMENDED to reflect this correction.

As to the other arguments raised by Seagram with respect to the constitutionality of the Wine Franchise Act, the Court finds that Seagram has failed to present an adequate basis for the relief requested. Rather, the defendant has merely re-raised the arguments initially presented in its motion for summary judgment. The Court remains convinced that the legal and factual basis of its Opinion on this issue is correct. Accordingly, the motion for reconsideration with respect to this issue is DENIED and the December 8, 1987 analysis is REAFFIRMED.

In addition, the Court finds that Seagram has failed to establish sufficient cause for certifying this case for interlocutory appeal. Under 28 U.S.C. § 1292(b), three criteria must be satisfied before certification by the district court is proper. First, the order must involve a controlling question of law. Second, a substantial ground for difference of opinion as to that question must exist. Third, a possible material advancement of the ultimate termination of the litigation must be furthered by immediate appeal. Contrary to Seagram's assertions, the Court finds that an interlocutory appeal in this matter will not materially advance resolution of this case but will only serve to further delay litigation and result in additional expenditures of time and resources by the parties, this Court, and the Court of Appeals. As a result, Seagram's petition requesting certification of the Court's August 31, 1987

Opinion and Order, thus allowing Seagram to pursue an interlocutory appeal, is DENIED.

IT IS SO ORDERED.